Peter HALTER, Plaintiff–Appellant,

v.

**DEPARTMENT OF REVENUE OF THE STATE OF COLORADO, MOTOR VE-HICLE DIVISION, Defendant–Appellee.**

No. 91CA2058.

Colorado Court of Appeals, Div. IV.

Feb. 25, 1993.

Rehearing Denied April 22, 1993.

Certiorari Denied Sept. 7, 1993.

Gregg J. Friedman, Boulder, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert C. Ripple, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge METZGER.

Plaintiff, Peter Halter, appeals from the district court judgment affirming the revocation of his driver's license by the Department of Revenue for refusing to submit to testing as required by the express consent law. We affirm.

The record reveals the following facts. On November 24, 1990, at approximately 11:48 p.m., plaintiff was stopped for speeding, and a "DUI officer" was subsequently called to the scene. Upon his arrival, the DUI officer noted an odor of an alcoholic beverage on plaintiff's breath and that his eyes were red and watery. Accordingly, he requested plaintiff to perform some voluntary roadside maneuvers. After plaintiff's poor performance on the roadside sobriety tests, he was arrested for driving under the influence (DUI).

Suspecting that plaintiff was impaired by alcohol, the arresting officer then gave plaintiff his choice of the testing alternatives applicable under the express consent statute for driving under the influence of alcohol (DUI-alcohol), and plaintiff chose to take a breath test. *See* § 42–4–1202(3)(a)(II), C.R.S. (1992 Cum.Supp.) (mandating blood or breath tests to determine alcohol content). The breath test was administered at 12:35 a.m., and the results showed plaintiff's blood alcohol content to be zero.

The arresting officer testified that "because the alcohol came back zero" and he still felt that plaintiff "was impaired," he thought at that point that plaintiff "was under drugs" because "that could be the only other answer." Thus, the arresting officer then called for a "drug recognition expert" (DRE).

Plaintiff subsequently performed additional physical maneuvers at the direction of the "DRE officer." Based on his observations of plaintiff, the DRE officer thereafter concluded that plaintiff was under the influence of marijuana. Plaintiff was advised of this conclusion and was requested to provide a urine sample for testing, one of the testing alternatives applicable under the express consent statute for driving under the influence of drugs (DUI-drug). *See* § 42–4–1202(3)(a)(III), C.R.S. (1992 Cum.Supp.) (mandating blood, saliva, or urine tests to determine drug content).

Plaintiff agreed to the urine test at approximately 1:25 a.m. However, when plaintiff had failed to provide a urine sample for testing by 3:40 a.m., despite having taken several drinks of water in the interim, the arresting officer served plaintiff with a notice of revocation for refusing to submit to testing.

Following an administrative hearing, the hearing officer found that plaintiff's uncooperative conduct in failing to provide a urine sample within a reasonable time constituted a refusal to submit to testing as required by the express consent law. Accordingly, he ordered the revocation of plaintiff's driver's license. On review, the district court affirmed the revocation.

## I.

Plaintiff first contends that he did not refuse to submit to testing in failing to provide a urine sample because he was physically unable to urinate at that time. We reject this contention.

Under the express consent statute, any driver who is required to submit to drug testing is expressly required to cooperate with any drug test requested, and a driver's failure to cooperate is expressly deemed to be a refusal to submit to testing. Sections 42–4–1202(3)(a)(III) and (IV), C.R.S. (1992 Cum.Supp.); *see also Baker v. State,* 42 Colo.App. 133, 593 P.2d 1384 (1979) (holding that uncooperative conduct by a licensee in failing to complete a breath test is tantamount to a refusal).

In addition, the determination by the trier of fact whether a driver refused testing for purposes of the revocation statute is based solely on the objective standard of the driver's words and other external manifestations of willingness or unwillingness to take a test, rather than on a subjective standard, such as the driver's state of mind. *Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (1978); *Alford v. Tipton,* 822 P.2d 513 (Colo.App.1991).

■ Here, it is undisputed that plaintiff verbally expressed his willingness to provide a urine sample, and he testified that he tried many times to make himself urinate because he did not want to lose his license for refusal, but that he "just couldn't go" at that time. However, it is also undisputed that plaintiff was unable to provide a sample for the more than two hours after he was requested to do so. Indeed, nearly four hours had elapsed from the time when he was stopped to the time

when he was served with the notice of revocation. In the interim, plaintiff was given several drinks of water. Also, plaintiff presented no medical evidence indicative of a condition that would have affected his ability to urinate.

Thus, the dispositive factual question concerning the refusal issue is whether plaintiff's conduct in failing to provide the urine sample manifested his noncooperation and unwillingness to take the test under the external circumstances here, or whether, instead, these external circumstances should have indicated to the arresting officer that plaintiff was physically unable to provide a urine sample.

■ However, the evaluation of the credibility of the witnesses and the weight to be given to the conflicting inferences which could be drawn from the evidence concerning this issue were matters within the factfinding province of the hearing officer. And, since the hearing officer's finding of plaintiff's unjustified refusal here was based on application of the proper legal standards and resolution of the conflicting inferences from the evidence, this finding is binding on appeal. *See Charnes v. Lobato,* 743 P.2d 27 (Colo.1987); *see also Alford v. Tipton, supra* (upholding revocation for refusing testing based on driver's external conduct notwithstanding head injury from automobile accident).

■ We also reject plaintiff's argument that he was denied equal protection by not being requested to take an alternative type of drug test when he was physically unable to take the urine test. As noted by plaintiff, the express consent statute provisions concerning alcohol testing provide for an alternative type of test if a licensee is physically unable to take one type of test, while there are no comparable provisions in the express consent statute concerning alternative types of drug testing in the event of physical incapacity. *Compare* § 42–4–1202(3)(a)(II) *with* § 42–4–1202(3)(a)(III). However, since the hearing officer rejected the factual premise for plaintiff's equal protection argument that he was physically unable to provide a urine sample here, we

need not and do not reach the merits of this contention.

## II.

Plaintiff next contends that he was not required to take the urine test in any event because the police lacked probable cause to arrest him for a DUI-drug offense and that, therefore, the revocation for his refusal to submit to the urine test was improper. Plaintiff does not challenge the basis or validity of his initial DUI arrest at the scene of the traffic stop but, rather, contends only that there was no probable cause to arrest him later for a DUI-drug offense at the time he was requested to take the urine test. We reject this contention.

Under the express consent statute, the applicable testing alternatives mandated for drivers arrested for DUI are different depending upon whether alcohol or drug impairment is suspected. These different alcohol and drug testing requirements are governed by separate and distinct provisions in the statute. *See* §§ 42–4–1202(3)(a)(II) (alcohol testing provisions) and 42–4–1202(3)(a)(III) (drug testing provisions). Nevertheless, under both the alcohol and the drug testing provisions of the express consent statute, the applicable testing alternatives are not mandated unless and until they are so requested and directed by a police officer having "probable cause" to believe that the licensee was driving in violation of the criminal statutes governing DUI offenses. Sections 42–4–1202(3)(a)(II) and (III).

■ However, under the current and applicable statutory scheme governing criminal DUI offenses, there are not separate and distinct DUI-alcohol and DUI-drug offenses; instead, there is only one single DUI offense which may be violated in multiple ways: by driving under the influence of either alcohol or drugs or both. *See* § 42–4–1202(1)(a), C.R.S. (1992 Cum.Supp.) (proscribing single misdemeanor DUI offense); *see also* §§ 42–4–1202(1)(f) and (h), C.R.S. (1992 Cum.Supp.) (defining "driving under the influence" and describing single

DUI charge as involving either alcohol or drugs or both).

■ Thus, under the pertinent statutory scheme, although "probable cause" for a single "DUI" arrest is required prior to a requirement that a driver submit to testing, the same factual basis for a police officer's probable cause for believing that a driver is under the influence of either alcohol or drugs or both may form the basis for the officer's authorization to request and the driver's obligation to take, either the applicable alcohol tests or the applicable drug tests or both. *See* §§ 42–4–1202(1) and 42–4–1202(3)(a)(II) and (3)(a)(III).

Consequently, contrary to plaintiff's argument, we agree with the district court that no "new" probable cause and no "new" arrest for a "DUI-drug" offense were necessary at the time plaintiff was requested to provide a urine sample before he could be validly required to submit to drug testing here. Rather, as noted by the district court, the arresting officer had probable cause to arrest plaintiff on suspicion of driving under the influence of some substance, whether it be alcohol or drugs, and plaintiff does not challenge the propriety of his initial DUI arrest at the scene of the traffic stop. Thus, we conclude that the eventual request that plaintiff take a urine test here was properly based on the same probable cause factors that justified his DUI arrest at the scene of the traffic stop.

■ We also note that, in addition to the "probable cause" requirement as a necessary predicate for drug testing under the express consent statute, another necessary predicate for drug testing under the applicable statutory provisions is that it must also be "reasonable" to require such testing. Section 42–4–1202(3)(a)(III). Nevertheless, we conclude that the request that plaintiff take a urine test was also "reasonable" under the circumstances here in which the results of the breath test showed no presence of alcohol but plaintiff still displayed various indications of intoxication.

Accordingly, since plaintiff was properly required to take the urine test here, the revocation of his license based on his refusal to provide the required urine sample was warranted under the applicable statutory scheme. *See* §§ 42-2-122.1(1.5)(a)(II) and 42-4-1202(3)(a)(III), C.R.S. (1992 Cum. Supp.).

III.

[redacted] We also reject plaintiff's argument that his due process rights were violated because he could not cross-examine the DRE officer, who was not present at the revocation hearing but whose written report was admitted into evidence, concerning the basis of his conclusion that plaintiff was under the influence of marijuana.

As noted by the hearing officer and the district court, the police reports were available for discovery prior to the hearing, and plaintiff had the statutory right to subpoena the DRE officer to require his attendance at the hearing, but failed to do so. *See* § 42-2-122.1(8)(c)(II), C.R.S. (1992 Cum.Supp.); *see also* § 24-4-105(4), C.R.S. (1988 Repl.Vol. 10A). Given these circumstances, *Colorado Department of Revenue v. Kirke,* 743 P.2d 16 (Colo.1987) is dispositive of plaintiff's argument.

IV.

We have considered plaintiff's remaining contentions of error and find them to be without merit.

Accordingly, the district court properly upheld the revocation here, and its judgment is affirmed.

PLANK, J., concurs.

TURSI, J., dissents.

Judge TURSI dissenting.

I respectfully dissent.

Based upon the totality of the circumstance surrounding the stop and testing of the plaintiff, I cannot escape the conclusion that the request for a urine sample on the alleged ground that it was for the purpose of testing on drugs was purely pretextual, and therefore, I agree with plaintiff that the request for a second test search was without probable cause. Hence, I dissent.

Here, after plaintiff was stopped because of erratic driving, probable cause to request a chemical test for driving while under the influence of an alcohol was more than adequately supported by the odor of an alcoholic beverage on his breath, his admission of recent consumption of two beers and a glass of wine, and his poor performance of the roadside sobriety tests. However, not a scintilla of evidence, *e.g.,* breath, odor, debris, or paraphernalia, existed to support a probable cause search for consumption of drugs. Rather, the arresting officer relied on a statement of a fellow officer that the mere possibility of drugs created probable cause to search. I know of no authority holding that probable cause of a mere possibility equals a reasonable search under either the Fourth Amendment or Colo. Const. art. II, § 7.

Thus, the critical issue is whether the failure of the Intoxilyzer to record and measure the admitted presence of alcohol on plaintiff's breath created probable cause to search for drugs.

Here, plaintiff willingly submitted to the breath test. And, when the machine malfunctioned, being "polite" and "cooperative," he agreed to try to supply a urine sample. Apparently, although there was no evidence of a willful refusal, he was unable to do so. Further, the record fails to show that plaintiff was asked to submit to either a blood or saliva test, either of which were also available at the option of the officer. *Cf. Sedlmayer v. Charnes,* 767 P.2d 754 (Colo.App.1988).

Under the circumstance surrounding this matter, I cannot credit the malfunctioning of a breath machine in a test of alcohol as equaling probable cause to search for drugs. Further, had it in fact been the goal of the arresting officer to search for drugs, after the inability of plaintiff to supply a urine sample, there was no impediment to requesting this admittedly cooperative arrestee to consent to the giving of a saliva or blood sample.

Therefore, I would reverse the judgment of the trial court and remand this matter to it for further remand to the department with directions to reinstate plaintiff's license.