Nancy GALLION, Petitioner

v.

**COLORADO DEPARTMENT OF REVENUE, Motor Vehicle Division, Respondent.**

No. 06SC809.

Supreme Court of Colorado, En Banc.

Nov. 5, 2007.

Hammond Law Offices, Kristopher L. Hammond, Steamboat Springs, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Ceri Williams, Assistant Attorney, General, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

■ Petitioner Nancy Gallion ("Gallion") appeals the revocation of her driver's license under Colorado's express consent statute, which mandates that all drivers take and cooperate in the taking of a blood alcohol test when requested to do so by a law enforcement officer who has probable cause to believe the individual was driving under the influence.

Gallion initially refused to submit to a blood alcohol content ("BAC") test. However, after the arresting officer had booked her into the county detention center, issued her a notice of revocation for refusal to submit to a BAC test, and then left to resume duty, Gallion told a sheriff's deputy that she wished to take the test. She was informed that it was too late. After a hearing officer found that Gallion's license was properly revoked for refusal, Gallion appealed and the district court ordered reinstatement. In *Gallion v. Colorado Department of Revenue, Motor Vehicle Division*, 155 P.3d 539 (Colo. App.2006), the court of appeals reversed the district court's decision, and we granted certiorari.

After reviewing the statutory language, the relevant case law, and a 1999 legislative change, we find that Colorado's express consent statute requires us to focus on the overarching question of whether an individual cooperated with the officer who had probable cause to believe the individual was driving under the influence. Where a driver initially refuses and then subsequently expresses willingness to take the test, we hold that the driver will be deemed to have refused testing if he or she did not timely cooperate. To timely cooperate, the driver must cooperate while the officer with probable cause remains engaged in the process of requesting and directing the completion of the chemical test such that a blood or breath sample can be obtained within two hours of driving. Because the facts in the record clearly demonstrate a failure to timely cooperate, we hold that Gallion's behavior constituted a refusal to submit to testing. Therefore, we affirm the judgment of the court of appeals.

## I. Factual and Procedural History

Gallion was pulled over by a Steamboat Springs police officer for erratic driving and was subsequently placed under arrest for driving under the influence. At the time of her arrest, the officer informed Gallion of Colorado's express consent statute and asked her to choose a chemical test of either her blood or her breath. Gallion responded that she did not understand the advisement.[1] The officer attempted several more times to explain the advisement and its consequences, but Gallion continued to respond that she did not understand and that she was scared. Ultimately, the officer concluded that Gallion was playing "dumb" to interfere with the investigation. He deemed her actions a refusal to take the test as he believed it clear that she did not intend to cooperate.

Gallion was transported to the Routt County Detention Center for processing. The detention center is a jail facility operated by the Routt County Sheriff's Department, a separate law enforcement agency from the Steamboat Springs Police Department. At the detention center, Gallion was presented with an Express Consent Affidavit and Notice of Revocation ("notice of revocation"), which the officer explained in detail. The document notified Gallion that on that date she had been asked to submit to a chemical test pursuant to Colorado's express consent statute, section 42-4-1301.1, C.R.S. (2007). Furthermore, the notice stated, "THIS IS YOUR OFFICIAL ORDER.... Because you refused to take or complete, or to cooperate with any testing or tests of your blood, breath, saliva, and/or urine, your driver li-

1. The only evidence in the record regarding this conversation between the officer and Gallion is found in the officer's police report. Unfortunately, it does not state explicitly what the officer or Gallion said.

cense and/or driving privilege is hereby revoked." Gallion signed the affidavit, stated to the officer that she understood, and surrendered her license to the officer. With her paperwork complete, the officer left to resume duty.

Subsequently, at some point between one hour and fifteen minutes to one hour and twenty-five minutes after Gallion was initially stopped, Gallion informed a sheriff's deputy at the detention center that she wanted to take "the test." The deputy denied her request on the basis that the arresting officer had left the station and Gallion's paperwork was finished.[2]

At the subsequent license revocation hearing, Gallion argued that because she validly recanted her initial refusal to submit to chemical testing, her license should not have been revoked for refusal. She maintained that the statute only required that she "cooperate with the request such that the sample of blood or breath can be obtained within two hours of [her] driving." § 42-4-1301.1(2)(a)(III), C.R.S. (2007). However, the hearing officer held that Gallion could not validly retract her refusal because the arresting officer was no longer "available" when Gallion recanted. Consequently, the hearing officer ordered that Gallion's driver's license be revoked for one year.

On appeal, the district court reinstated Gallion's driver's license. The court found that the hearing officer incorrectly interpreted the law to require that the arresting officer be available to administer the chemical test at the time a driver recants an initial refusal. The court noted that although the statute requires that the test "shall be administered at the direction of a law enforcement officer having probable cause to believe that the person had been driving [under the influence]," that officer need not be the arresting officer. § 42-4-1301.1(5). Consequently, the district court found the hearing officer erred in holding that Gallion must recant her initial refusal to the arresting officer in order for it to be valid.

The state appealed, and the court of appeals reversed the district court and reinstated the order of revocation. The court of appeals held that (1) any recantation must be made to the arresting officer or other law enforcement officer with probable cause and (2) the recantation must be made in sufficient time to obtain a blood or breath sample within two hours of the person's driving. *Gallion*, 155 P.3d at 542. The court of appeals found no evidence that either the arresting officer or another officer with probable cause was available to administer the test when Gallion recanted. *Id.* Furthermore, the court found that Gallion made no showing that the testing could have been completed in time to satisfy her burden to cooperate such that a sample of blood or breath could be obtained within two hours of her driving. *Id.*

We granted certiorari to review the court of appeals' decision, and we now affirm.[3]

## II. Review of Current and Prior Law

### A. Statutes

Colorado's express consent statute provides that all drivers are required to take, and to cooperate in the taking and completing of, a BAC test when requested to do so by an officer with probable cause that the individual was driving under the influence. If the driver refuses to take or cooperate in the completion of the test, the Department of Revenue is required to revoke the driver's license for a period of one year. Specifically, the statute states:

A person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be *required to take and complete, and to cooperate in the taking and completing of, any test* or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath *when*

---

2. The record contains no further details regarding additional statements or actions by Gallion.

3. We granted certiorari on the following issue:
   Whether the court of appeals erred by holding that Petitioner could not validly recant her refusal to take a chemical blood test even though she consented to take a chemical test within two hours of driving as required by § 42-4-1301.1(2)(a)(III), C.R.S. (2006), but the arresting officer was no longer available and had returned to patrol.

*so requested and directed by a law enforcement officer having probable cause* to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI, DUI per se, DWAI, habitual user, or UDD.

§ 42–4–1301.1(2)(a)(I)(emphasis added). Thus, when an officer with probable cause requests and directs a BAC test, the driver is required to take, complete, and cooperate in the completion of the test.

The purpose of the driver's obligation to cooperate is to ensure that the test is completed or a sample is obtained within a defined time frame. Section 42–4–1301.1(2)(a)(III) states:

If a law enforcement officer requests a test under this paragraph (a), the person *must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving.*

(emphasis added). Thus, the driver's actions must allow a sample to be obtained within two hours.

Additionally, the statute outlines the duties of the officer with probable cause in dealing with a driver that refuses to cooperate. First, the officer must make a determination as to whether the person "refuses to take or to complete or to cooperate in the completing of such test or tests." § 42–2–126(5)(a)(I), C.R.S. (2007). Upon concluding that there has been a refusal, the officer "acting on behalf of the [D]epartment [of Revenue], shall serve the notice of revocation personally on [the driver]." *Id.* Finally, after serving the notice of revocation, "the officer shall take possession of any driver's license … held by the person." § 42–2–126(5)(b).

A failure to take, complete, or cooperate in the completion of the test results in license revocation for a period of one year. § 42–2–126(2)(a)(II), (6)(b)(3). Specifically, the license revocation provision of section 42–2–126 states that the department shall revoke the license of any driver who "[r]efused to take or to complete, or to cooperate in the completing of, any test or tests of the person's blood, breath, saliva, or urine." § 42–2–126(2)(a).

## B. Case Law

In addition to the governing statutes, we have the benefit of multiple cases which apply the concepts of refusal and cooperation. We previously addressed the issue of when a driver's actions constituted a refusal to submit to BAC testing in *Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (1978). In *Dolan,* the driver initially agreed to take a chemical test, but ultimately refused to cooperate after he began to vomit and refused to stand up for the purpose of being tested. *Id.* at 174–75, 576 P.2d at 561. We overturned the court of appeals' holding that these actions did not rise to the level of refusal, stating: "In deciding whether there was a refusal to submit to a chemical test, the trier of fact should consider the driver's words and other manifestations of willingness or unwillingness to take the test." *Id.* at 175, 576 P.2d at 562. Thus, an objective test became the standard to determine whether an individual's statements or behavior constituted either an outright refusal to submit to testing or a refusal by noncooperation. *Id.*

In addition to our decision in *Dolan,* the court of appeals has addressed the issue of refusal and failure to cooperate on multiple occasions. Generally, these cases presented two factual scenarios. In one set of cases, the court of appeals reviewed the behavior and statements of the driver to determine whether they evidenced an agreement to take the test or a refusal to cooperate. For example, in *Halter v. Department of Revenue, Motor Vehicle Division,* the court of appeals considered whether a driver had refused testing when he agreed to provide a urine sample but then claimed he was unable to urinate for the next two hours and fifteen minutes despite having been given several glasses of water to drink. 857 P.2d 535, 536–37 (Colo.App.1993). The court of appeals upheld the hearing officer's factual determination that the driver's uncooperative conduct in failing to provide a urine sample within a reasonable time was a refusal to submit to testing. *Id.* at 537. In this case as well as others, the court of appeals applied the test from *Dolan* and reviewed the objective statements and behavior of the driver to determine whether there was an ultimate

refusal to submit to testing as a matter of law.[4]

In the second set of cases, the court of appeals dealt with the factual scenario where the driver initially refused, but subsequently agreed to submit to testing. Thus, the court of appeals considered whether it could find sufficient cooperation or an agreement to take the test in spite of an initial refusal. Beginning with *Zahtila v. Department of Revenue, Motor Vehicle Division,* the court of appeals held that a driver's initial refusal to consent to a test is not irrevocable and in certain circumstances may be rectified by later consent. 39 Colo.App. 8, 10, 560 P.2d 847, 849 (1977). In *Zahtila,* only twenty-five minutes elapsed between the driver's initial refusal to submit to testing and his subsequent consent. *Id.,* 560 P.2d at 849. The court reasoned that on these facts, the primary purpose of the statute, which was to obtain evidence of BAC levels to curb drunk driving through prosecution of the offense, was fulfilled. *Id.,* 560 P.2d at 849 (citing Colo. Legislative Council Research Publ. No. 123, *Highway Safety in Colorado* 37–46 (1966)). Thus, the court read the statute to allow a recantation of an initial refusal that reasonably furthered this evidence-gathering goal.[5] *Id.,* 560 P.2d at 849.

Although we find *Dolan* and the court of appeals cases to be consistent with the relevant statutes in their overall focus on cooperation and the timely completion of testing, we note one significant change by the General Assembly in 1999 in order to further confirm the legislature's intent that we focus on cooperation.

## C. The 1999 Amendment to the Statute

Prior to 1999, the court of appeals decided *Pierson v. Colorado Department of Revenue, Motor Vehicle Division,* in which the court considered whether a driver must retract an initial refusal within a certain time period in order to avoid license revocation for refusal. 923 P.2d 371 (Colo.App.1996). The court of appeals held that a driver could avoid license revocation for refusing a test as long as the driver's retraction and belated consent occurred within a *reasonable* time after driving. *Id.* at 373. After this decision, the General Assembly inserted the following subsection, which remains in the current statute: "If a law enforcement officer requests a test ... the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." Ch. 35, sec. 1, § 42–2–126, 1999 Colo. Sess. Laws 90, 90. (re-codified as § 42–4–1301.1(2)(a)(III) in 2002). Thus, the legislature's subsequent amendment clarified the question of what constitutes a reasonable time-when the driver's overall cooperation allows a sample to be obtained within two hours of driving.

## III. Analysis

The construction of a statute is a question of law that we review de novo. *Mishkin v. Young,* 107 P.3d 393, 396 (Colo. 2005). Construing the meaning and scope of the words in a statute requires that we determine and give effect to the intent of the legislature. *People v. Flippo,* 159 P.3d 100, 104 (Colo.2007). In doing so, we begin with the plain and ordinary meaning of the statutory language. *Id.* We generally presume that the legislature is aware of the previously expressed legal importance of the words and phrases it uses. *People v. Guenther,* 740 P.2d 971, 976 (Colo.1987). When the statutory language is ambiguous or appears to conflict with other statutory provisions, the court may rely on other guideposts to discern the intended meaning, such as legislative history, prior law, consequences of a given interpretation, agency interpretations, and the

---

4. *See, e.g., Poe v. Dep't. of Revenue, Motor Vehicle Div.,* 859 P.2d 906 (Colo.App.1993) (holding that it was reasonable for arresting officer to take the driver's silence to be a refusal to submit to testing based on an objective determination that such silence was a manifestation of non-cooperation and unwillingness to take the test); *Baker v. State,* 42 Colo.App. 133, 593 P.2d 1384 (1979) (finding that driver's failure to blow up the breathalyzer balloon more than half way after

seven requests by officer constituted refusal to submit to testing).

5. Following *Zahtila,* several other cases recognized that an initial refusal is not necessarily binding. *See Rogers v. Charnes,* 656 P.2d 1322 (Colo.App.1982); *McCampbell v. Charnes,* 626 P.2d 762 (Colo.App.1981).

overall end the legislature intended to achieve. § 2–4–203, C.R.S. (2007); *People v. Rockwell,* 125 P.3d 410, 417 (Colo.2005).

Our review of the express consent statute's specific text, its application by the courts, and the legislative change in 1999 indicates that where a driver initially refuses and then subsequently expresses willingness to take a BAC test, the driver will be deemed to have refused testing if he or she did not timely cooperate. The language of the statute is clear in its focus on cooperation and is therefore controlling. Because the issue of cooperation concerns whether the driver's statements and actions constituted a refusal to submit to testing, we find that the analysis of *Dolan* applies. Thus, a finding of cooperation or non-cooperation requires that the court look to a driver's statements and behavior indicating willingness or unwillingness to submit to testing. *Dolan,* 195 Colo. at 175, 576 P.2d at 562.

We note that the court of appeals cases dealing with the issue of recantation are not inconsistent with this broader focus on cooperation. Indeed, the legislature demonstrated its implicit acceptance of the primary holding of *Zahtila* when it fine-tuned the statute in 1999 and yet left undisturbed the rule that a driver's initial refusal to submit to testing may be rectified by later consent and cooperation.[6] *See Tompkins v. De-Leon,* 197 Colo. 569, 595 P.2d 242 (1979) (holding that when the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with the judicial construction of the statute). More importantly, however, the legislative change regarding the two hour rule strongly demonstrates that the General Assembly intended the courts to address refusal and recantation within the framework of timely cooperation.

Gallion uses the statutory language regarding the two hour requirement to contend that it would be improper to find refusal if a person began to cooperate at a time when it was still possible to obtain a test within two hours of driving. She notes that the statute merely requires that she "cooperate with the request such that a sample of blood or breath can be obtained within two hours of [her] driving." § 42–4–1301.1(2)(a)(III). Consequently, she argues that she did not refuse testing because she indicated her willingness to take a test at a point when it may have still been possible to obtain results within two hours of driving. We disagree.

We hold that the driver must cooperate with the officer while the officer remains engaged in requesting or directing the completion of the test. This requirement is rooted in the language of the statute. Specifically, the statute requires that the driver "cooperate in the taking and completing of" the test *"when so requested and directed* by a law enforcement officer having probable cause" that the individual was driving under the influence. § 42–4–1301.1(2)(a)(I) (emphasis added). While the officer with probable cause remains engaged in requesting or directing the completion of the chemical test, it may be reasonable to allow the driver to proceed with testing even after an initial refusal. However, where the officer has requested the test, determined that the driver is refusing testing, completed his duties prescribed by statute to deal with a refusal, and left the presence of the driver, the time period during which the driver must show cooperation has come to an end. The officer is no longer requesting the test or directing the process to secure the chemical test. Thus, cooperation at that point is untimely.

In sum, to determine whether a driver cooperated with the officer with probable cause who requested that the driver submit to testing, we look to the driver's statements and behavior indicating willingness or unwillingness to take the test. *See Dolan,* 195

---

**6.** In fact, since *Zahtila* was decided thirty years ago, the General Assembly has made multiple changes to these statutes including reenacting them in their entirety. We find one change particularly noteworthy. In 1989, the General Assembly added the following language concerning a driver's choice of either a blood or breath test:

"if a person elects either a blood or breath test, the person *shall not be permitted to change the election."* § 42–4–1301.1(2)(a)(II)(emphasis added). The General Assembly could have adopted similarly strict language regarding a driver's initial refusal and yet did not do so.

Colo. at 175, 576 P.2d at 562. Additionally, we ask whether that cooperation was timely. To be timely, the driver must cooperate while the officer remains engaged in the process of requesting and directing the completion of the chemical test. *See* § 42–4–1301.1(2)(a)(I). Furthermore, the driver must cooperate such that a sample of blood or breath can be obtained within two hours of driving. *See* § 42–4–1301.1(2)(a)(III).

Finally we turn to the question of whether Gallion failed to cooperate and thereby refused testing as a matter of law. Here, there is no question that an officer with probable cause requested that Gallion submit to a BAC test. Therefore, Gallion was statutorily obligated to cooperate.

Gallion's statements and behavior demonstrate an initial refusal followed by a subsequent attempt to cooperate. After first refusing to cooperate with the officer's multiple requests that she submit to testing, Gallion told the sheriff's deputy that she wished to take a test roughly one hour and fifteen to one hour and twenty-five minutes after she was pulled over. Even assuming sufficient time remained to obtain a test within two hours of driving, Gallion's cooperation was untimely. Gallion's belated attempts to cooperate occurred when the officer with probable cause was no longer engaged in the process of requesting and directing the completion of her chemical test. The officer had completed the duties required of him by statute. First, based on Gallion's behavior and statements, he had made the determination that Gallion had refused to cooperate. Second, he had issued her the notice of revocation and had taken possession of her driver's license. *See* § 42–2–126(5)(a)(I), (5)(b). Then, having completed his statutory obligations in dealing with a driver that refuses testing, the officer had left to resume duty and was no longer present. Indeed, by the time of her recantation, Gallion was in the custody of an entirely different law enforcement agency that was not responsible for administering or directing the completion of her chemical test. Consequently, based on the facts before us, we find that Gallion failed to timely cooperate and thus refused testing as a matter of law.

## IV. Conclusion

We affirm the judgment of the court of appeals.

Justice EID does not participate.