Richard Thomas STUMPF,
Petitioner–Appellee,

v.

COLORADO DEPARTMENT OF REV-
ENUE, MOTOR VEHICLE DIVI-
SION, Respondent–Appellant.

No. 08CA1036.

Colorado Court of Appeals,
Div. II.

April 30, 2009.

Rehearing Denied June 4, 2009.

Michael L. Griffith, P.C., Michael L. Grif-
fith, Fort Collins, Colorado, for Petitioner–
Appellee.

John W. Suthers, Attorney General, Ana
C. Bowman, Assistant Attorney General,
Denver, Colorado, for Respondent–Appellant.

Opinion by Judge CONNELLY.

A statute requires the Colorado Depart-
ment of Revenue to revoke the licenses of
suspected drunk drivers who refuse blood or
breath testing. The district court held the
statute does not allow revocation unless a
test request is made within two hours of
driving a vehicle. We disagree. The statute
requires only that a request be made within
a reasonable time. We therefore reverse the
district court, and uphold the Department's
order revoking the driver's license of peti-
tioner, Richard Thomas Stumpf, who refused
to be tested some three and one-half hours
after an accident.

### I. Background

#### A. Statutory Overview

Colorado law at all relevant times has re-
quired administrative revocation of the li-
censes of suspected drunk drivers who: (1)
after testing were found to have an excessive
blood alcohol content (BAC); or (2) refused a
proper request to submit to blood or breath
testing. § 42–2–126(1)(a), C.R.S.2008. The
legislature has declared a driver in either
situation "to be a safety hazard," and has
mandated prompt revocation of the driver's
license "[t]o provide safety for all persons
using the highways of this state." *Id.*

These two bases for license revocation are
"independent of each other" and "have com-
pletely different origins." *Charnes v. Boom,*
766 P.2d 665, 668 (Colo.1988) (*Boom* ). Most
significantly, the former has a temporal limi-
tation—a test must be completed "within two
hours after driving" for an excess BAC result
to require revocation, § 42–2–126(2)(b),
C.R.S.2008—that *Boom* held does not control
the latter. Because "test results serve im-
portant functions in settings other than revo-
cation proceedings," *Boom,* 766 P.2d at 669,
*Boom* held a driver's refusal to submit to
testing requires revocation as long as the
request was made within "a reasonable time"
of driving. *Id.*

Current section 42–4–1301.1(2)(a)(I) con-
tinues to provide, as did the statute at issue

in *Boom,* that drivers "shall be required" to cooperate in breath or blood testing "when so requested and directed by a law enforcement officer having probable cause to believe" they were driving in violation of DUI or related laws. § 42–4–1301.1(2)(a)(I), C.R.S.2008. The question here is whether the legislature in 1999 overruled *Boom* in a separate section by creating a new two-hour time limit on a driver's obligation to cooperate in testing.

The 1999 amendment created what is now section 42–4–1301.1(2)(a)(III). *See* ch. 35, sec. 1, § 42–2–126(2)(a)(II), 1999 Colo. Sess. Laws 90; ch. 342, sec. 3, § 42–4–1301.1(2)(a)(III), 2002 Colo. Sess. Laws 1908. It provides "[i]f a law enforcement officer requests a test," then the suspected drunk driver "must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42–4–1301.1(2)(a)(III).

B.  Facts and Procedural History

Richard Thomas Stumpf and a passenger were involved in a single-vehicle accident around 11:30 p.m. in a remote area of Larimer County. Stumpf drove the vehicle off the road, the vehicle rolled over, and it hit a tree. A patrol trooper (Trooper One) arrived at the scene around 12:55 a.m. As Stumpf was being put in an ambulance to be transported thirty-five miles to Poudre Valley Hospital, Trooper One radioed Trooper Two to go there. Stumpf arrived at 1:42 a.m., and Trooper Two arrived ten minutes later.

Stumpf showed "obvious" indicia of intoxication: he smelled of alcohol, his speech was slurred, and his eyes were bloodshot. At first he claimed not to recall who had been driving, but ultimately conceded he "was probably driving." Trooper Two informed Stumpf of the express consent law and of the consequences of refusal. He twice requested that Stumpf submit a blood sample for chemical testing; Stumpf twice refused.

Trooper One arrived at the hospital around 2:52 a.m., after completing his accident scene investigation. Trooper Two reported Stumpf had refused testing. Trooper One re-interviewed the passenger and learned additional details about pre-accident "partying." He then provided Stumpf with a written revocation notice, which Stumpf refused to sign. Trooper One put a copy of the notice in Stumpf's boot, and left the hospital at 4:18 a.m.

Stumpf requested and was granted an administrative hearing challenging the revocation. The hearing officer upheld the revocation. On the point relevant to this appeal, the officer ruled that Stumpf had been asked to submit to blood testing within a "reasonable time" after the accident.

Stumpf then petitioned for judicial review. The district court held there was substantial evidence Stumpf had the capacity to refuse testing and "did indeed refuse" to take the test. The court, however, invalidated the revocation order because the request for testing was made more than two hours after the accident.

The court acknowledged that requiring a request within two hours of driving, and not simply within a "reasonable time," was contrary to the supreme court's 1988 holding in *Boom.* It concluded, however, that *Boom* "is no longer the appropriate standard of law." Instead, it held the 1999 amendment now requires requests to be made no more than two hours after driving in order to support revoking the licenses of suspected drunk drivers who refuse to submit to testing.

II.  Discussion

This appeal involves a question of statutory construction that we review de novo. *Meyer v. State,* 143 P.3d 1181, 1184, 1187 (Colo.App.2006) (appellate court conducts de novo review of legal conclusions of both a district court and the Department in driver's license revocation cases); *see generally Colo. Dep't of Revenue v. Hibbs,* 122 P.3d 999, 1002 (Colo.2005) (statutory construction is reviewed de novo). The Department's application of correct legal standards to the facts is binding on reviewing courts, however, unless it "is unsupported by the evidence in the record." § 42–2–126(9)(b), C.R.S.2008; *see Meyer,* 143 P.3d at 1187.

A.  Colorado law continues to require that a testing request be made within a reasonable time (not necessarily within two hours) of driving to support revocation for refusal.

The statute in effect at times relevant here mandated license revocation of a driver who

refused to take, complete or cooperate in completing blood, breath, or other tests "as required by section 42–4–1301.1(2)." *See* ch. 342, sec. 6, § 42–2–126(2)(a)(II), 2002 Colo. Sess. Laws 1916. It since has been restructured, but its effect remains the same. *See* § 42–2–126(3)(c), C.R.S.2008 (requiring revocation for "refusal"); § 42–2–126(2)(h) (defining "refusal" to include refusing to take, complete, or cooperate in completing blood, breath or other tests as required by section 42–4–1301.1(2) ).

Section 1301.1(2)(a)(I) provides that drivers "shall be required" to cooperate in breath or blood testing "when so requested and directed by a law enforcement officer having probable cause to believe" they were driving in violation of DUI or related laws. § 42–4–1301.1(2)(a)(I). The only express statutory condition on a testing request is probable cause to believe a driver has violated DUI laws. But because the purpose of testing is to obtain evidence relevant to determining whether a person drove while impaired, *Boom* imposed "a reasonable time limitation" on the request. 766 P.2d at 669.

We must decide whether new section 1301.1(2)(a)(III) overruled *Boom* by requiring that requests occur within two hours of driving to trigger automatic suspension for refusal. This new section provides "[i]f a law enforcement officer requests a test," then the suspected drunk driver "must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42–4–1301.1(2)(a)(III).

This new section was meant to require timely cooperation by equivocating drivers. *See Gallion v. Colo. Dep't of Revenue,* 171 P.3d 217, 221–22 (Colo.2007). The problem arose from *Pierson v. Colorado Department of Revenue,* 923 P.2d 371 (Colo.App.1996), which held a driver who initially refused testing could avoid revocation by later retracting the refusal. *Id.* at 372, *discussed in Gallion,* 171 P.3d at 221. *Pierson* revealed a catch–22 loophole: testing had to be completed within two hours for a BAC result to mandate revocation, but a driver could refuse testing within that period yet still avoid revocation by consenting later. *See generally* Hearings on H.B. 99–1026 before the H. Transp. Comm., 62d General Assembly, 1st Sess. (Jan. 13, 1999) (testimony of Ray Slaughter, representing District Attorneys' Council).

█ It is clear, and the parties here agree, this new section was designed to close the *Pierson* loophole: now, if requested to cooperate within two hours of driving, a driver must agree to do so in time to allow testing within that period or else face revocation. The question is whether it went further by creating a new limitation that drivers need *only* cooperate (upon pain of revocation) if the testing request is made within two hours of driving.

We hold section 42–4–1301.1(2)(a)(III) did not overrule the *Boom* holding that a request need only be made within a reasonable time of driving to trigger automatic suspension for refusal. We presume that if the legislature intended to overrule *Boom* and create a new two-hour limitation on the obligation to cooperate, it would have said so clearly and directly. *Cf. Whitman v. American Trucking Associations,* 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (presuming Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

By construing the 1999 amendment to overrule *Boom,* the district court and Stumpf read it more broadly than its plain language and purposes require. Subsection (a)(III), unlike subsection (a)(I), does not impose any condition on an officer's testing *request;* instead, it governs a driver's duty to *cooperate.* And it does *not* provide a driver need *only* cooperate with requests made within two hours of driving. Rather, it requires that "[i]f *a law enforcement officer requests a test,"* then the suspected drunk driver "must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42–4–1301.1(2)(a)(III) (emphasis added).

Section 42–4–1301.1(2)(a)(III) requires that drivers provide timely cooperation within a two-hour period if possible, but does not excuse their refusal beyond that period. It

will have no effect on requests, such as the one here, made two hours after driving. This does not mean, however, that such requests can never give rise to revocation. Instead, requests made more than two hours after driving remain subject to *Boom's* reasonable time limitation.

B. The hearing officer properly found the request here was made within a reasonable time of Stumpf's driving.

■ The hearing officer found Trooper Two (the first to arrive at the hospital while Trooper One finished the accident site investigation) made the testing request within a reasonable time. There was no legal error in this finding, which is fully supported by the record. A test request is untimely if it is made "at a time so remote from the time of the [driving] as to have little prospect of producing reliable evidence of the driver's blood-alcohol content at the time of" the driving. *Boom*, 766 P.2d at 669 n. 4. The hearing officer properly found this request timely under the *Boom* standard.

The hearing officer found no evidence Trooper Two "delayed going to the hospital or asking for a test beyond doing the necessary investigation to determine who was driving and if [Stumpf] was intoxicated." The hearing officer, however, did not make specific findings concerning the precise time of the accident or the testing request. Accordingly, with respect to those times, we will construe the record in the light most favorable to Stumpf.

The accident occurred no earlier than 11:30 p.m. (and possibly as late as 11:55). The testing request had been refused no later than 2:52 a.m., when Trooper One arrived at the hospital and was informed by his fellow trooper of the refusal. Accordingly, the request was made and refused less than three and one-half hours after Stumpf's driving.

The ultimate relevance of BAC test results taken hours after the driving depends on the rate at which alcohol is absorbed into and then eliminated from the blood. *See generally* Kimberly S. Keller, *Sobering up* Daubert: *Recent Issues Arising in Alcohol–Related Expert Testimony*, 46 S. Tex. L.Rev. 111,

121–22 (2004). We cannot say a blood test conducted three and one-half hours after driving is incapable of yielding potentially relevant evidence.

Colorado criminal cases have allowed BAC results from tests taken three or more hours after driving. *See, e.g., People v. Nhan Dao Van*, 681 P.2d 932, 934 (Colo.1984) (second test taken three hours after accident), *cited with approval in Boom*, 766 P.2d at 669; *People v. Emery*, 812 P.2d, 665, 666–67 (Colo. App.1990) (second test taken three and one-half hours after accident); *cf. Halter v. Dep't of Revenue*, 857 P.2d 535, 537 (Colo. App.1993) (upholding revocation when final actions of driver deemed to be "refusal" occurred nearly four hours after driving). Other courts have allowed BAC results of tests four hours after driving. *State v. Hughey*, 142 N.M. 83, 163 P.3d 470, 473–75 (2007) (accident at 11:30 p.m., test at 3:30 a.m.); *Commonwealth v. Senior*, 433 Mass. 453, 744 N.E.2d 614, 616–21 (2001) (accident at 6:50 p.m., test at 11:00 p.m.).

The issue before us, of course, is not whether blood test results would have been admissible in a criminal case. There were no test results (because Stumpf refused testing), and this is not a criminal prosecution. We hold only, under the circumstances of this case, the requested test potentially could have yielded relevant evidence. Accordingly, the hearing officer properly determined the test request was made within a reasonable time of driving.

## III. Conclusion

The judgment is reversed, and the case is remanded to the district court with directions to reinstate the Department's order revoking Stumpf's driver's license.

Judge CASEBOLT and Judge ROY concur.