COLORADO COURT OF APPEALS                                    2016COA137

Court of Appeals No. 15CA0620
El Paso County District Court No. 14CV34046
Honorable Thomas K. Kane, Judge

Robin F. Edwards,

Plaintiff-Appellant,

v.

Colorado Department of Revenue, Motor Vehicle Division,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FURMAN
Miller and Navarro, JJ., concur

Announced September 22, 2016

Daniel Thom & Katzman P.C., Steven Katzman, Colorado Springs, Colorado, for
Petitioner-Appellee

Cynthia H. Coffman, Attorney General, Laurie Rottersman, Senior Assistant
Attorney General, Denver, Colorado, for Respondent-Appellant

¶ 1     Plaintiff, Robin F. Edwards, appeals the district court's judgment affirming the revocation of her driver's license by the Colorado Department of Revenue, Motor Vehicle Division (Department), under provisions of Colorado's revocation and express consent statutes. Edwards cooperated with the person who administered her breath test, but her breath test samples were obtained more than two hours after she drove.

¶ 2     We are asked to consider a narrow question: Does Colorado's civil revocation statute require law enforcement officials to obtain a valid breath sample within two hours of the time a person drove before the person's license can be revoked? *See* § 42-2-126(2)(b), C.R.S. 2016. Contrary to the rulings of the hearing officer and the district court, we conclude that it does. Because Edwards's breath samples were obtained more than two hours after she drove, this statutory requirement was not met and her revocation based on the test results from these samples cannot be sustained. We therefore reverse the district court and remand with directions to set aside the order of revocation. (We note that this case does not address Edwards's *criminal* prosecution for various alcohol-related driving offenses, which

could also lead to adverse consequences concerning her driver's license.)

## I. The Breath Tests

¶ 3     The parties do not dispute the relevant facts. A police officer stopped Edwards for speeding at 8:51 a.m. on September 7, 2014. It appeared to the officer that Edwards had been doing more than speeding. Edwards's speech was slurred, her eyes were bloodshot, and she had difficulty locating her driver's license, registration, and proof of insurance. The officer invited her to participate in voluntary roadside maneuvers; she agreed to participate, but her stumbling and lack of balance indicated she was intoxicated. The officer then advised her of Colorado's express consent law and offered her the choice between a breath test and a blood test. Edwards chose to take a breath test. The officer took her into custody and transported her to a local police department where she could take a breath test.

¶ 4     Colorado Department of Public Health regulations require a certified operator to administer a breath test in a specific sequence. *See* Dep't of Pub. Health & Env't Regs. 4.1.3.5, 4.2.3,

5 Code Colo. Regs. 1005-2. This sequence affected the timing of Edwards's test.

## A. The Required Breath Test Sequence

¶ 5    On arrival at the facility, the breath test subject must complete a twenty-minute "deprivation period" before taking the breath test. *Id.* at 4.2.3. After the deprivation period, the subject gives the administrator two breath samples. *Id.* at 4.1.3.5.

¶ 6    The results of these two samples must agree with each other within a certain range. *See id.* For the purposes of this opinion, the two samples are "valid" if they agree with each other within the specified range and thus can be used to determine whether a person was driving with excessive breath alcohol content (BAC). If the results of the two samples do not agree with each other within that range, they are not valid.

¶ 7    If the samples are not valid, the administrator must discontinue the testing sequence and print an "exception report." *Id.* at 4.1.3.5.1. Then, the breath test subject repeats the twenty-minute deprivation period. *Id.* at 4.1.3.5.2. After this period, the administrator will retest the subject. *See id.* at 4.1.3.5.1, 4.1.3.5.2.

## B. Edwards's Test

¶ 8     At the police station, Edwards's first breath test attempt resulted in an exception report rather than a completed test because the results from her samples were not within the required agreement range.  Another twenty-minute deprivation period then began at 10:30 a.m. and ended at 10:50 a.m. Edwards provided two valid breath samples for testing, one at 10:52:06 a.m. and the other at 10:56:45 a.m.; the results from these samples were within the required agreement range.  The intoxilyzer report from these samples showed her BAC to be .229 grams of alcohol per two hundred ten liters of breath, based on the sample provided at 10:56 a.m.  Of course, that is well over the .08 or more level required for revocation for driving with an excessive BAC.  § 42-2-126(2)(b).

## C. Edwards's License Revocation

¶ 9     The hearing officer and district court considered the timing of Edwards's test and concluded that the Department should revoke Edwards's license.

### 1. The Hearing Officer

¶ 10 At the revocation hearing, the arresting officer testified that the .229 BAC result was based on a breath sample Edwards provided more than two hours after the traffic stop. In response, Edwards contended that her driver's license should not be revoked because she provided valid breath samples after the two-hour time period required by the revocation statute.

¶ 11 The hearing officer found that the time of driving was 8:51 a.m. and that Edwards provided valid breath samples at 10:52 a.m. and 10:56 a.m. The hearing officer also found that the test completed at 10:56 a.m. yielded the results showing Edwards's BAC to be .229. But the hearing officer rejected Edwards's argument, ruling that the test administrator performed the breath test in "substantial accordance" with the regulations, and the test, which began at 10:50 a.m., was within two hours of the time Edwards stopped driving. Based on the results of this breath test, the hearing officer ordered the revocation of Edwards's license for driving with an excessive BAC.

### 2. The District Court

¶ 12    On review, the district court affirmed the revocation of Edwards's license, but on different grounds than those used by the hearing officer.  First, the court ruled that the revocation statute does not require that the testing be completed within two hours after driving.  Second, based on Edwards's high BAC test results obtained two hours and five minutes after driving and other evidence of intoxication, the court ruled that it was more probable than not that Edwards's BAC was above the statutory limit at the time of driving and within two hours after driving.  The court determined that these circumstances supported the hearing officer's decision to revoke Edwards's license for driving with an excessive BAC.

¶ 13    On appeal, Edwards challenges the Department's revocation of her license.

## II.  Our Review of the Department's Revocation Action

¶ 14    We may reverse the Department's revocation of a license if we determine that, based on the administrative record, the Department "exceeded its . . . statutory authority" or "made an erroneous interpretation of the law."  § 42-2-126(9)(b), (11); *see*

*also* § 24-4-106(7), C.R.S. 2015; *Fallon v. Colo. Dep't of Revenue*, 250 P.3d 691, 693 (Colo. App. 2010).

¶ 15    In driver's license revocation cases, we conduct de novo review of the legal conclusions and statutory construction made by the district court and Department. *Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1002 (Colo. 2005); *Stumpf v. Colo. Dep't of Revenue*, 231 P.3d 1, 2 (Colo. App. 2009). When construing a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole and in context to give consistent, harmonious, and sensible effect to all their parts. *Francen v. Colo. Dep't of Revenue*, 2014 CO 54, ¶ 8. When a term is not defined in a statute, and if a statute is unambiguous, we give effect to the statute's plain and ordinary meaning and look no further. *Id.*; *Brodak v. Visconti*, 165 P.3d 896, 898 (Colo. App. 2007).

### A.  Statutory Two-Hour Time Limit Applicable to Revocations for Excessive BAC

¶ 16    Edwards contends the Department erroneously interpreted Colorado's revocation statute. Because her BAC test results were obtained more than two hours after she drove, Edwards argues

7

that the Department's revocation was improper as a matter of law. To address Edwards's contention, we consider specific terms of Colorado's revocation and express consent statutes.

### 1. Colorado's Revocation Statute

¶ 17    Colorado's revocation statute provides two circumstances when the Department may revoke a person's driver's license: (1) when a driver takes a BAC test and the results show excess BAC or (2) when a driver refuses to take a BAC test. *See* § 42-2-126(2), (3); *Stumpf*, 231 P.3d at 1. The first scenario applies in this case.

¶ 18    With respect to breath test results, the term "BAC" is defined as meaning a person's BAC "expressed in grams of alcohol per two hundred ten liters of breath as shown by analysis of the person's breath." § 42-1-102(8.5)(b), C.R.S. 2016. "Excess BAC 0.08" is defined as meaning that a person drove a vehicle in this state when the person's BAC was 0.08 or more "at the time of driving or *within two hours after driving*." § 42-2-126(2)(b) (emphasis added.)

¶ 19    So what is the meaning of the term "within two hours after driving" in the revocation statute? To answer this question, we

first analyze the temporal limitation of when testing must occur based on current and past versions of the revocation statute. Then we conclude, contrary to the district court's analysis, that in civil revocation proceedings based on BAC test results, the revocation statute requires that law enforcement officials obtain valid breath test samples within two hours of when that person last drove.

¶ 20 It is well settled that, as to revocations based on a refusal of testing, there is no precise temporal limitation on when that refusal must have occurred. Rather, a driver's refusal of testing will support a revocation on that basis as long as the testing request was made within a "reasonable time" after driving. *See Charnes v. Boom*, 766 P.2d 665, 666 (Colo. 1988); *Stumpf*, 231 P.3d at 1, 3.

¶ 21 In contrast, as to revocations based on excessive BAC test results, it has long been understood that there is a precise temporal limitation on when that testing must have occurred. *See Boom*, 766 P.2d at 667; *Stumpf*, 231 P.3d at 1. This temporal limitation is now set forth in the language of section 42-

2-126(2)(b) providing for revocations based on excessive BAC test results "within two hours after driving."

¶ 22    This statutory language has been part of the revocation statute applicable to revocations based on excessive BAC test results since 1988.  *See* Ch. 293, sec. 2, § 42-2-122.1(1.5)(a)(I), (8)(c), 1988 Colo. Sess. Laws 1360, 1362.  (We also note that the criminal misdemeanor offense of "DUI per se" is defined in identical terms, as this offense is committed when a person drives a vehicle when the person's BAC is 0.08 or more "at the time of driving or within two hours after driving."  § 42-4-1301(2)(a), C.R.S. 2016.)  As originally enacted, the revocation statute provided a shorter temporal limitation on testing, requiring revocation based on excessive BAC test results "at the time of the commission of the alleged offense or within one hour thereafter."  Ch. 476, sec. 9, § 42-2-122.1(1)(a)(I), 1983 Colo. Sess. Laws 1641.

¶ 23    In upholding revocations based on excessive BAC test results under the original statutory language, the supreme court acknowledged that this language provided a one-hour limitation for when the testing must have occurred.  *See Charnes v. Olona,*

10

743 P.2d 36, 38 n.8 (Colo. 1987) (stating that this statutory language required the test to be "performed" within one hour of the alleged offense); *Colo. Div. of Revenue v. Lounsbury*, 743 P.2d 23, 24 n.2 (Colo. 1987) (same). Similarly, in a refusal case, the supreme court stated that, under the original statutory language, a driver who took a test was not subject to revocation unless the test was "performed" within the one-hour period after the commission of the alleged offense. *Boom*, 766 P.2d at 667.

¶ 24    We next consider whether the temporal limitation for testing applicable to revocations based on excessive BAC is consistent with the express consent statute.

### 2. Express Consent Statute

¶ 25    Colorado's express consent and revocation statutes work together. The express consent statute provides the authority for an officer to ask a driver to take a breath test, § 42-4-1301.1, C.R.S. 2016; the revocation statute provides the consequences for driving while intoxicated, § 42-2-126(3), (4).

¶ 26    Certain provisions of Colorado's express consent statute also relate to the temporal limitation for testing applicable to revocations based on excessive BAC test results. Colorado's

11

express consent statute requires a suspected intoxicated driver to take a breath test or a blood test "when so requested and directed by a law enforcement officer [who has] probable cause to believe" that the driver has committed an alcohol related driving offense. § 42-4-1301.1(2)(a)(I). If a law enforcement officer requests a test under section 42-4-1301.1(2)(a), "the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42-4-1301.1(2)(a)(III). The General Assembly initially added this section to the revocation statute in 1999 and later recodified it as part of the express consent statute. *See* Ch. 35, sec. 1, § 42-2-126(2)(a)(II), 1999 Colo. Sess. Laws 90; Ch. 342, sec. 3, § 42-4-1301.1(2)(a)(III), 2002 Colo. Sess. Laws 1908; *see Stumpf*, 231 P.3d at 2.

¶ 27    The General Assembly amended the express consent statute in 2007 to add an "extraordinary circumstances" exception to the general rule that a driver is entitled to choose between taking either a blood test or a breath test. *See* Ch. 261, sec. 1, § 42-4-1301.1(2)(a.5), 2007 Colo. Sess. Laws 1023-24; *People v. Null*, 233 P.3d 670, 678 (Colo. 2010). As pertinent here, we note that

section 42-4-1301.1(2)(a.5)(I) describes the time period set forth in section 42-4-1301.1(2)(a)(III) as "the two-hour time period required" for the "completion" of the chosen test. Thus, taken together, the provisions of section 42-4-1301.1(2)(a)(III) and section 42-4-1301.1(2)(a.5)(I) indicate that timely "completion" of a test is synonymous with obtaining the test samples within the two-hour time limit.

¶ 28     Based on the provisions of section 42-4-1301.1(2)(a)(III), the courts have stated in more recent refusal cases that there is a two-hour time frame for a test to be "completed" or "a sample to be obtained." *Gallion v. Colo. Dep't of Revenue*, 171 P.3d 217, 220 (Colo. 2007); *see Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 15.

3. The Operative Language of the Revocation Statute

¶ 29     We now return to the operative language of section 42-2-126(2)(b) of the revocation statute, providing for revocations based on excessive BAC test results "within two hours after driving." We conclude that, when read in context, the plain and ordinary meaning of the language in section 42-2-126(2)(b) is that test samples must be obtained within two hours after the

13

time of driving to support a revocation based on excessive BAC test results from these samples. *See* § 42-4-1301.1(2)(a)(III); § 42-4-1301.1(2)(a.5)(I); *Gallion,* 171 P.3d at 220; *Haney,* ¶ 15; *Stumpf,* 231 P.3d at 1.

¶ 30    Applying the plain and ordinary meaning of the term "within," we conclude that the two-hour time limit set forth in section 42-2-126(2)(b) for obtaining the test samples includes the entire one hundred-twentieth minute after the time of driving. *See Bath v. Dep't of Revenue,* 762 P.2d 767, 767-68 (Colo. App. 1988) (holding that the one-hour time limit under the original statutory language included the entire sixtieth minute after driving).

¶ 31    To summarize, since BAC is defined as a person's alcohol content as shown by an analysis of the person's breath, that analysis cannot occur until an alcohol evaluation is reported, or, in other words, the test is completed and the results are obtained.

### B.  Edwards Was Not Subject to Revocation

¶ 32    Because Edwards did not give the breath sample that established her BAC within two hours after she stopped driving,

the test results from those samples provide no basis for revocation based on an excessive BAC under the revocation statute. § 42-2-126(2)(b).

¶ 33     No one disputes that Edwards stopped driving at 8:51 a.m., as the hearing officer found. Thus, to sustain a revocation based on excessive BAC test results, Edwards was required to give the breath samples that established her BAC no later than 10:51 a.m., two hours after driving. *See* § 42-2-126(2)(b). But, Edwards gave breath samples at 10:52 a.m. and 10:56 a.m., more than two hours after driving. *See Boom*, 766 P.2d at 667 (in a refusal case, stating that a driver who consented to a test "is not subject to" revocation for driving with an excessive BAC unless the test was performed within the then-applicable statutory one-hour time limit); *Pierson v. Colo. Dep't of Revenue*, 923 P.2d 371, 373 (Colo. App. 1996) (similarly stating in another refusal case that a driver who consented to and failed a test "is not subject to" revocation for driving with an excessive BAC unless the test was performed within the then-applicable statutory two-hour time limit), *superseded by statute as stated in Gallion*, 171 P.3d 217; *cf. Francen*, ¶¶ 10, 13 (noting that a driver

15

"is subject to" revocation when the requirements of section 42-2-126(2)(b) have been met).

¶ 34 We disagree with two of the hearing officer's and district court's conclusions. First, contrary to the hearing officer's analysis, section 42-2-126(2)(b) does not include a "substantial accordance" standard concerning the two-hour time limit requirement. Thus, it is irrelevant when the breath test sequence begins. Rather, when, as here, the breath test subject gives the samples that establish her BAC after the statutory two-hour time limit, she is simply not subject to revocation for driving with an excessive BAC under the requirements of section 42-2-126(2)(b). *See Boom*, 766 P.2d at 667; *Pierson*, 923 P.2d at 373.

¶ 35 Second, contrary to the district court's analysis, the revocation statute provides no basis for a fact finder to use test results obtained after the two-hour time limit to infer that a driver had an excessive BAC at the time of driving or within two hours after driving.

¶ 36 In this regard, we note that test results may give rise to permissible inferences concerning the criminal misdemeanor offenses of "DUI" or "DWAI," but the criminal misdemeanor

16

offense of "DUI per se" is based solely on tests administered within two hours after driving. *See* § 42-4-1301(2)(a), (6)(a). Like the offense of DUI per se, revocation for driving with an excessive BAC under section 42-2-126(2)(b) must be based solely on test results showing a BAC of 0.08 or more from samples taken within the two-hour time limit.

¶ 37 Finally, we note that a driver is subject to revocation for refusal for failing to cooperate with a testing request such that the samples of blood or breath can be obtained within two hours after driving. *See* § 42-2-126(2)(h), (3)(c); § 42-4-1301.1(2)(a)(III); *Stumpf*, 231 P.3d at 3. But, in this case, the evidence did not show that the failure to obtain breath samples within the statutory two-hour time limit was due to any noncooperation by Edwards. To the contrary, the hearing officer expressly found that Edwards was not at fault in this regard, so she is not subject to revocation for refusal.

## III. Conclusion

¶ 38 Because the Department revoked Edwards's license for driving with an excessive BAC based on its application of erroneous legal standards, we cannot sustain its order on

17

judicial review, and the district court erred in upholding it. *See* §
42-2-126(9)(b).

¶ 39 Accordingly, the district court's judgment is reversed, and the case is remanded with directions to set aside the order of revocation.

JUDGE MILLER and JUDGE NAVARRO concur.