546 P.3d 605
2024 CO 20
The PEOPLE of the State of Colorado, Petitioner,
v.Glen Gary MONTOYA, Respondent.
Supreme Court Case No. 22SC580
Supreme Court of Colorado.
April 15, 2024 Certiorari to the Colorado Court of Appeals, Court of Appeals Case No, 18CA1409 Attorneys for Petitioner: Philip J, Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado Attorneys for Respondent: Megan A. Ring, Public Defender, Mackenzie R. Shields, Deputy Public Defender, Denver, Colorado En Banc JUSTICE HOOD delivered the Opinion of the Court, in which JUSTICE MARQUEZ, JUSTICE GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. JUSTICE HOOD delivered the Opinion of the Court. ¶1 Glen Gary Montoya was arrested on suspicion of driving under the influence ("DUI"). He agreed to submit to a blood test, but later refused to allow a nurse to draw his blood. After the nurse left, he claimed to have changed his mind and asked to take the test. No draw occurred. At trial, the prosecution wanted to use Montoya’s refusal to prove consciousness of guilt. But how should Colorado criminal courts address whether he refused under the circumstances here? ¶2 A division of the court of appeals concluded that if a criminal court makes a pretrial determination that a driver refused testing, that determination must be based on the law of refusal that has developed in the administrative, license-revocation context. People v. Montoya, 2022 COA 55M, ¶ 2, 516 P.3d 970, 973. The division also concluded that "if the prosecutor seeks to use as evidence a defendant’s written or recorded statement refusing a chemical test, but the defendant disputes refusal, the entire circumstances surrounding the defendant’s test-taking must be submitted for the jury’s consideration." Id.; see CRE 106. [1] ¶3 We reverse in part and affirm in part. Contrary to the division, we hold that criminal DUI trials are governed by the same evidentiary rules as any other criminal trial. Accordingly, criminal courts are not bound by the law of refusal that governs administrative, license-revocation hearings, They should instead consider whether the proffered evidence of refusal or recantation is admissible under the Colorado Rules of Evidence. ¶4 However, we agree with the division that under CRE 106 the jurors determining Montoya’s guilt or innocence should have been permitted to consider both his initial refusal and his subsequent recantation of that refusal. Even so, our conclusion in this respect is predicated on the district court’s mistakes of law and should not be construed to limit a trial court’s broad discretion, when properly exercised, under CRE 106. I. Facts and Procedural History ¶5 While driving one day, Montoya rear-ended another car. The other driver called 911 and reported that Montoya seemed drunk. Three officers responded to the scene of the accident. ¶6 The first officer to arrive didn’t see any signs that Montoya was intoxicated. The other two officers, however, noticed that Montoya smelled of alcohol; had watery, bloodshot eyes and slurred speech; and stumbled when he walked. They also noticed that Montoya’s pants were wet and believed that he had urinated on himself despite Montoya’s explanation that he had spilled Mountain Dew. ¶7 One of the officers asked Montoya to perform roadside maneuvers, but Montoya declined. ¶8 That officer then arrested Montoya on suspicion of DUI and advised him of Colorado’s expressed consent statute, which provides that any person who drives in this state consents "to submit to a test to determine the alcoholic content of the person’s blood or breath when requested to do so by a law enforcement officer who has probable cause to believe the person was driving under the influence of alcohol." People v. Hyde, 2017 CO 24, ¶ 12, 393 P.3d 962, 966; see also § 42-4-1301.1(2)(a)(I), C.R.S. (2023). Montoya agreed to take a blood test. ¶9 At a detox facility, Montoya again agreed to take a blood teat. But when a nurse arrived to draw his blood, Montoya refused, saying, "Yeah, but I don’t think I’m gonna do it," The nurse left. About ten to fifteen minutes later, Montoya told the officers that he would take the test. No test was conducted. ¶10 The prosecution charged Montoya with DUI, careless driving, and failing to provide proof of insurance. Montoya pled guilty to the insurance charge before trial, and the jury found him guilty of the remaining two charges, At the sentencing hearing, Montoya admitted that he had three prior DUI convictions. Because this conviction was, therefore, his fourth, the court entered it as a felony. See § 42-4-1301(1)(a), C.R.S. (2023). ¶11 Montoya appealed. The division concluded that the district court had abused its discretion by (1) determining that Montoya had refused testing as a matter of law and (2) providing redacted, and potentially misleading, bodycam footage from the detox facility to the jury. Montoya, ¶¶ 4, 22, 516 P.3d at 973, 976. The division further concluded that these errors weren’t harmless. Id. at ¶¶ 22, 34, 516 P.3d at 976, 978. It therefore reversed Montoya’s DUI conviction and remanded for a new trial. Id. at ¶ 4, 516 P.3d at 973. ¶12 We granted the prosecution’s petition for review.1 After oral argument and while awaiting this opinion, Montoya passed away. II. Analysis ¶13 We begin our analysis by discussing our jurisdiction to review this case despite Montoya’s recent death. We then discuss Colorado’s expressed consent statute and the legislature’s use of a dual approach (civil license revocation and criminal charges) to the problem of drunk driving. Recognizing that civil and criminal proceedings don’t always serve the same purposes, we address what it means for a driver to refuse testing in each setting. Finally, we discuss the district court’s exclusion, under CRE 106, of a portion of a video in which Montoya claims he changed his mind after initially refusing to submit to testing. A. Jurisdiction to Proceed After Montoya’s Death [2] ¶14 After Montoya died, his counsel moved to abate his conviction ab initio. [3] ¶15 Abatement ab initio is a court-made doctrine that provides that "a defendant’s death that occurs while his criminal conviction is pending on direct appeal ‘abates not only the appeal but also all proceedings had in the prosecution from its inception.' " People v. Griffin, 2014 CO 48, ¶ 4, 328 P.3d 91, 92 (quoting Crooker v. United States, 325 F.2d 318, 320 (8th Cir. 1963)). However, in Griffin, we held that "the doctrine of abatement ab initio in Colorado does not extend to cases pending on certiorari review." Id. at ¶ 14, 328 P.3d at 95. So there, we vacated the order granting certiorari review and dismissed the case. Id. at ¶ 15, 328 P.3d at 95. ¶16 In reply to the prosecution’s opposition to Montoya’s abatement motion, Montoya shifted gears. His counsel withdrew the motion to abate and instead requested that this court, as in Griffin, simply vacate its order granting certiorari and dismiss the prosecution’s petition for certiorari review, thereby leaving the division’s judgment vacating Montoya’s conviction undisturbed. In making this request, Montoya's counsel emphasized that the two cases are identically postured: both involve an appeal by the prosecution. So, counsel reasoned, the same result should occur here. [4, 5] ¶17 The decision to grant a petition for writ of certiorari is entirely within this court’s sound discretion. C.A.R. 49; Bovard v. People, 99 P.3d 585, 592-93 (Colo. 2004). Although Montoya initiated the direct appeal, the prosecution petitioned this court for certiorari review of the same subject matter. So here, our continued exercise of appellate jurisdiction is informed by statutory law stating that "[t]he prosecution may appeal any decision of a court in a criminal case upon any question of law." § 16-12-102(1), C.R.S. (2023). "There is no question that certiorari is now, and always has been, a recognized form of appellate review." Bill Dreiling Motor Co. v. Ct. of Appeals, 171 Colo. 448, 468 P.2d 37, 39 (1970); C.A.R. 2. [6, 7] ¶18 That said, appeals under this statute are limited to "purely legal questions." Hunsaker v. People, 2015 CO 46, ¶ 29, 351 P.3d 388, 395. This presents no problem regarding the first issue, in which the prosecution seeks review of the division’s interpretation of the statutory term "refusal." "Statutory interpretation is categorically a question of law" and therefore reviewable under section 16-12-102(1). Hunsaker, ¶ 29, 351 P.3d at 395. And both parties agree the division erred as to this central point of law, a circumstance conspicuously absent in Griffin. [8] ¶19 But the prosecution also seeks review of that portion of the division’s opinion invoking the rule of completeness to reverse the district court’s decision to exclude evidence as self-serving hearsay. See Montoya, ¶ 33, 516 P.3d at 978. Evidentiary decisions often involve both factfinding and legal analysis and therefore, are generally not reviewable under section 16-12-102(1). See People v. Gabriesheski, 262 P.3d 653, 658 (Colo. 2011) (observing that although "evidentiary rulings may involve the construction of statutes or rules, or some similar question of law, a trial court’s decision to admit or exclude evidence is not, in and of itself, an appealable question of law"); People v. George, 2017 COA 75, ¶ 26, 488 P.3d 1159, 1164. Yet, "[s]uch rulings may nevertheless be appealable under [section] 16-12-102(1) if the trial court made its ruling based on an assertedly erroneous interpretation of the law." People v. Welsh, 176 P.3d 781, 791 (Colo. App. 2007). ¶20 Because we agree with the division that the district court misapplied the law governing the intersection of the rule of completeness and self-serving hearsay and because a decision from this court will provide greater clarity on this broader legal issue, we exercise our discretion to continue review of both issues presented. See C.A.R. 49; cf. People v. Tharp, 746 P.2d 1337, 1338-39 (Colo. 1987) (dismissing the appeal under section 16-12-102(1) in part because "review of evidentiary questions by the appellate court in a unique set of circumstances would shed no light on broader legal issues" and, therefore, "would be of no significant precedential value"). ¶21 We now turn to the merits. B. Colorado’s Expressed Consent Statute: Administrative and Criminal Consequences of Refusing a Test [9, 10] ¶22 To curtail drunk driving, the Colorado legislature has enacted statutes that impose both civil and criminal penalties for those who drive while intoxicated. See People v. Simpson, 2017 CO 25, ¶ 24, 392 P.3d 1207, 1213; Francen v. Colo. Dep’t of Revenue, 2014 CO 54, ¶ 28, 328 P.3d 111, 118. Under Colorado law, anyone who drives in Colorado expressly consents
to take and complete, and to cooperate in the taking and completing of, any test or tests of the person’s breath or blood for the purpose of determining the alcoholic content of the person’s blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle [while intoxicated or otherwise under the influence of drugs or alcohol]. § 42-4-1301.1(1), (2)(a)(I), (b)(1). A conscious driver may typically revoke this statutory consent and refuse to submit to testing, but such refusal comes at a cost. See Hyde, ¶ 13, 393 P.3d at 966. ¶23 In the administrative context, the price of refusal is revocation of the driving privilege. The state will revoke a driver’s license if, within two hours of driving, his blood alcohol content ("BAG") is 0.08 or higher or if he refuses to submit to testing. § 42-2-126(3)(a)(I), (c), C.R.S. (2023) ("the revocation statute"). "Refusal" in this context means that an individual "fails to take and complete, and to cooperate in the completing of, the test elected … within two hours of the person’s driving." § 42-4-1301.1(2)(a)(ID-(III); see also § 42-4-1301.1(2)(a.5)(III), (3). [11] ¶24 If a driver agrees to testing, he may choose the method—breath or blood. § 42-4-1301.1(2)(a)(II). Once a driver has chosen a particular testing method, however, he may not change his mind. Id. But nothing in the statute prohibits a driver who initially refuses testing from changing his mind and agreeing to a BAC test. See Gallion v. Colo. Dep’t of Revenue, 171 P.3d 217, 221 n.5 (Colo. 2007) (collecting eases that have concluded that a driver’s refusal isn’t irrevocable). Had the legislature intended such a prohibition, it "knew how to convey that concept." People v. Denhartog, 2019 COA 23, ¶ 20, 452 P.3d 148, 154; see also People in Int. of L.S., 2023 CO 3M, ¶ 29 n.3, 524 P.3d 847, 854 n.3. [12, 13] ¶25 To prevent triggering the administrative, license-revocation provisions, the driver’s recantation must be timely. Gallion, 171 P.3d at 223. A timely recantation must (1) allow for a blood or breath sample to be obtained within two hours of driving, as required by the revocation statute, and (2) occur "while the officer remains engaged in the process of requesting and directing the completion of the chemical test." Id. (concluding as a matter of law that the defendant had refused testing because, despite requesting a test within the requisite two-hour window, the officer had "completed his statutory obligations in dealing with a driver that refuses testing, … had left to resume duty[,] and was no longer present"). Furthermore, if BAC testing results are the basis upon which the license revocation is premised, the statute requires strict compliance with its temporal limits. See Edwards v. Colo. Dep’t of Revenue, 2016 COA 137, ¶¶ 29-37, 406 P.3d 347, 351–52 (concluding that BAC results obtained two hours and one minute after driving couldn’t support a revocation based on a BAC of 0.08 or higher). [14] ¶26 But administrative, license-revocation proceedings are not criminal trials. They serve different purposes. Compare § 42-2-126(1) (explaining the purposes of the traffic code, including to provide highway safety by quickly revoking the licenses of drivers who have shown themselves to be unsafe), with § 18-1-102, C.R.S. (2023) (explaining the purposes of the criminal code, including to define offenses and to give reasonable notice of prohibited conduct), and, § 18-1-102.5, C.R.S. (2023) (explaining the purposes of sentencing, including to punish, to rehabilitate and prevent crime, and to establish accountability). [15] ¶27 As a result, procedural and evidentiary rules in one context aren’t necessarily applicable in the other. See Francen, ¶¶ 13–29, ¶ 13 n.5, 328 P.3d at 115–19, 115 n.5 (discussing the different standards regarding the legality of an initial stop in both contexts, the inapplicability of the exclusionary rule in the administrative context, and how the relevant statutes’ stated purposes of keeping the roads safe versus punishing wrongdoers sometimes supports the use of different evidentiary rules). For example, in the administrative context, a refusal is admissible to show that the driver refused, not that the driver was intoxicated. But in a criminal trial, a refusal isn’t admissible because it proves that the driver refused testing; a refusal is admissible because it may provide circumstantial evidence that the driver knew (or at least suspected) that taking the test would produce incriminating evidence of guilt. [16] ¶28 As with any criminal prosecution, when a driver is charged with DUI, the prosecution bears the burden of proving every element of that offense beyond a reasonable doubt. Vega v. People, 893 P.2d 107, 111 (Colo. 1995). The legislature has defined DUI as
driving a motor vehicle or vehicle when a person has consumed alcohol or one or more drugs, or a combination of alcohol and one or more drugs, that affects the person to a degree that the person is substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle. § 42-4-1301(1)(f). ¶29 The legislature has also provided that certain "presumptions or inferences" flow from a defendant who has certain BAC levels "at the time … of the alleged offense or within a reasonable time thereafter." § 42-4-1301(6)(a). For example, if the defendant’s BAC was 0.05 or lower when tested, "it shall be presumed that the defendant was not under the influence of alcohol and that the defendant’s ability to operate a motor vehicle or vehicle was not impaired by the consumption of alcohol." § 42-4-1301(6)(a)(I). But, if his BAC was 0.08 or higher, "such fact gives rise to the permissible inference that the defendant was under the influence of alcohol." § 42-4-1301(6)(a)(III). ¶30 These presumptions and inferences are rebuttable, however, and "shall not be construed as limiting the introduction, reception, or consideration of any other competent evidence bearing upon the question of whether … the defendant was under the influence of alcohol or whether … [his] ability to operate a motor vehicle … was impaired by the consumption of alcohol." § 42-4-1301(6)(b). ¶31 Although the prosecution doesn’t need to prove a specific BAC to meet its burden of proof, the results from blood or breath testing help prove that the defendant drove "while under the influence of alcohol," a material element of DUI. COLJI-Crim. 42:09 (2023); see Mitchell v. Wisconsin, 588 U.S. 840, 139 S. Ct. 2525, 2535, 204 L.Ed.2d 1040 (2019) ("The importance of the needs served by BAC testing is hard to overstate. … BAC tests are crucial links in a chain on which vital interests hang."); South Dakota v. Neville, 459 U.S. 553, 564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (noting that "the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test"). [17] ¶32 A driver’s refusal to submit to testing is also probative because it may suggest consciousness of guilt. Cox v. People, 735 P.2d 153, 158 (Colo. 1987) ("Most state courts admit evidence of refusal as relevant because the refusal is conduct that shows a consciousness of guilt in the same manner as destruction of evidence, flight, or threats against witnesses."). A driver may rebut that suggestion by introducing evidence that he later recanted or that his refusal was unrelated to a consciousness of guilt. Id. at 159 (" ‘[Evidence that would tend to show that the refusal was for reasons unrelated to a consciousness of guilt or the fear that the test would reveal the intoxication’ should be allowed to controvert ‘the inference to be drawn from an unexplained refusal to take the alcohol test.’" (alteration in original) (quoting State v. Bolstad, 124 Wis.2d 576, 370 N.W.2d 257, 262 (1985))). It is then for the jury to consider the competing inferences that may be drawn from such circumstantial evidence in determining whether the defendant violated the DUI statute. See id.; see also § 42-4-1301 (6)(d); People v. King, 2017 CO 44, ¶¶ 8–10, 401 P.3d 516, 518. ¶33 With these distinctions in mind, we return to the case at hand. C. Additional Facts Regarding the Redacted Video and Montoya’s Refusal and Alleged Recantation ¶34 The arresting officer’s body camera recorded his encounter with Montoya, including their exchange with a nurse at a detox facility. At a pretrial hearing, the parties discussed the admissibility of this footage. The prosecution sought to introduce a redacted version of the video, and while Montoya largely agreed to the proposed redactions, he objected to the final version because the recording stopped immediately after he said, "2:05, Glen Montoya refused." He argued that, under the rule of completeness, the ten to fifteen minutes following that statement, which included his subsequent request for testing, should be included in the exhibit shown to the jurors. ¶35 The district court disagreed. It concluded that Montoya’s alleged recantation was inadmissible because once a defendant refuses, "he no longer has the right to take a test," and so Montoya’s renewed request was nothing more than self-serving hearsay. The court was also concerned that the jury might be confused as to why Montoya wasn’t tested after he changed his mind. ¶36 Defense counsel moved to reconsider. In response, the district court concluded that "under the rule of optional completeness, … Montoya’s statement that he would take the test after he declined the test and was no longer entitled to take the test is a selfserving statement, and therefore it should not be introduced into evidence because it lacks guarantees of trustworthiness." ¶37 The jurors saw only the redacted video. Neither party mentioned Montoya’s subsequent recantation—both argued this as a refusal case. At the prosecution’s request, the court instructed the jury that, if it found that Montoya "refused to take and complete, and to cooperate in the taking and completing of a chemical test of his breath or blood, you may consider this refusal along with other evidence in determining whether [he] is guilty of Driving Under the Influence or Driving While Ability Impaired." ¶38 On appeal, the division held that "if the district court makes a pretrial finding of refusal for evidentiary purposes, the ruling must be based on the law of refusal that has developed in the context of administrative proceedings revoking an individual’s driver’s license due to refusal to take a chemical test." Montoya, ¶ 2, 516 P.3d at 973. Applying that law, the division observed that Montoya’s request for testing occurred within the revocation statute’s requisite two-hour timeframe. Id. at, ¶ 22, 516 P.3d at 976. But the district court didn’t make findings regarding whether the requisite law enforcement personnel had disengaged, whether the test could have been conducted within the two-hour timeframe, or whether "Montoya engaged in other actions that constituted refusal by noncooperation." Id. Such findings are necessary to avoid license revocation based on refusal. See Gallion, 171 P.3d at 222–23. So, the division concluded, without similar findings here, the district court’s legal conclusion that Montoya had refused testing, and its related exclusion of Montoya’s recantation evidence, was an abuse of discretion. Montoya, ¶ 22, 516 P.3d at 976. ¶39 The division then concluded that the error wasn’t harmless because it forced defense counsel "to present the case as one involving a refusal to submit to a chemical test," id. at ¶ 35, 516 P.3d at 979, and removed from the jury’s consideration whether Montoya’s change of mind successfully rebutted the presumption that his initial refusal indicated a "consciousness of guilt," id. at ¶¶ 41-42, 516 P.3d at 980. D. The Law Governing "Refusal" in Criminal Trials ¶40 Both the prosecution and defense counsel agree that the division's holding erroneously imports the administrative scheme for refusal into criminal trials. The prosecution argues that this holding may preclude introduction of any evidence of refusal if a defendant recants his refusal within two hours of driving. This is because the administrative focus is simply on whether the defendant refused or failed to cooperate in testing within two hours of driving rather than on his consciousness of guilt for driving under the influence. The prosecution’s point is that a defendant's flip-flopping on consent to testing might reveal consciousness of guilt even if the defendant eventually consents to testing within two hours. In contrast, defense counsel argues that the division’s holding could improperly restrict recantation evidence by requiring that it adhere to the narrow requirements of license-revocation proceedings rather than to the evidentiary rules that generally govern the admissibility of evidence in criminal trials. [18, 19] ¶41 Although we typically review a district court’s evidentiary rulings for an abuse of discretion, we review de novo whether the court applied the correct legal standard in making such a ruling. Ronquillo v. EcoClean Home Servs., Inc., 2021 CO 82, ¶ 12, 500 P.3d 1130, 1134. [20] ¶42 The admissibility of evidence in a DUI trial, as in any criminal trial, is governed by our evidentiary rules on relevancy and prejudice. CRE 101, 401-03; see also People v. Zubiate, 2013 COA 69, ¶ 10, 411 P.3d 757, 761, overruled, on other grounds by People v. Vanderpauye, 2023 CO 42, ¶ 36 n.11, 530 P.3d 1214, 1224 n.11. This means the prosecution may introduce any evidence that is relevant and not otherwise inadmissible or unduly prejudicial to satisfy its burden of proof. Cox, 735 P.2d at 159; see also CRE 401–03. [21] ¶43 As explained above, the legislature has provided that certain rebuttable presumptions and inferences attach to specific BAC levels. And like the prosecution, the defendant may introduce any relevant evidence that is not otherwise inadmissible or unduly prejudicial to rebut such a showing. Cox, 735 P.2d at 159. It is ultimately up to the jury to decide how much weight to give to competing evidence and inferences. Id. [22, 23] ¶44 While "refusal" has acquired a precise definition in the revocation context that requires strict compliance with the statute, "refusal" in the criminal context is just one of many pieces of evidence that jurors may weigh in determining whether the prosecution has proven that the driver was intoxicated at the time of the charged offense. See id. So too is a driver’s recantation of his initial refusal. Regardless of whether that recantation would prevent revocation in the administrative context, in the context of a criminal trial, it is circumstantial evidence that the jurors may consider, along with any reasonable inferences they may draw from such conduct, in reaching a verdict. See id.; see also Francen, ¶¶ 13–29, 328 P.3d at 115– 19. [24] ¶45 Therefore, we conclude that the division erred by adopting the narrow definition of refusal used in administrative, license-revocation proceedings for determining the admissibility of evidence in criminal DUI trials. Courts should instead consider the admissibility of refusal and recantation evidence as it would any other piece of evidence, using the Colorado Rules of Evidence as their guide. ¶46 Having concluded that the division adopted an improper legal standard, we now consider whether it nonetheless correctly concluded that the district court erred by excluding the recantation evidence here. E. Rule 106: The Rule of Completeness [25, 26] ¶47 We review the district court’s ruling for an abuse of discretion. People v. McLaughlin, 2023 CO 38, ¶ 22, 530 P.3d 1206, 1211. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or, as applicable here, if it misapplies the law. Id. Where, as here, a defendant has preserved his objection to the exclusion, we consider any error for harmlessness and will reverse "only if the error substantially influenced the jury’s verdict or affected the fairness of the trial proceedings." People v. Owens, 2024 CO 10, ¶ 66, 544 P.3d 1202; see also Krutsinger v. People, 219 P.3d 1054, 1062–63 (Colo. 2009). [27] ¶48 CRE 106 codified the commonlaw rule of completeness. It provides that, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."2 CRE 106; see also McLaughlin, ¶ 4, 530 P.3d at 1207. The purpose of Rule 106 is to prevent a party from misleading a jury by excluding portions of a statement that would clarify or explain the part already received. McLaughlin, ¶ 24, 530 P.3d at 1211. [28, 29] ¶49 "[B]y its plain language, CRE 106 contemplates that the proponent of the original evidence that creates a misleading impression is also the proponent of the additional evidence that ought in fairness to be considered contemporaneously with the original evidence." Id. at ¶ 27, 530 P.3d at 1212. Therefore, if the prosecution offers a statement by the defendant as a party admission or a declaration against the defendant’s penal interest, for example, it is deemed to have offered all portions of the statement that are admissible under Rule 106 and Rules 401-403 (when requested by the defendant as the adverse party). See id. [30] ¶50 The prosecution may not avoid including a defendant’s full statement by arguing that the excluded portion is inadmissible self-serving hearsay. Id. at ¶¶ 29–32, 530 P.3d at 1212–13; cf. Vanderpauge, ¶ 4, 530 P.3d at 1218 ("A defendant’s self-serving hearsay is just a form of hearsay, and as such, it is subject to the rules of evidence governing all hearsay. … [T]here are no special hearsay rules for determining the admissibility of a defendant’s self-serving hearsay."). [31] ¶51 That said, any statement or evidence a party seeks to "admit[ ] under the rule of completeness remains ‘subject to the considerations of relevance and prejudice required under CRE 401 and CRE 403.’ " McLaughlin, ¶ 33, 530 P.3d at 1213 (quoting People v. Melillo, 25 P.3d 769, 775 (Colo. 2001)); see also 1 Kenneth S. Broun et al., McCormick on Evidence § 56 (Robert P. Mosteller ed., 8th ed.), Westlaw (database updated July 2022) ("[T]he question of whether an otherwise inadmissible part offered to explain, modify, or qualify the part already received is admitted should turn on whether its probative value for that purpose is substantially outweighed by dangers of unfair prejudice, confusion of the issues, misleading the jury, or waste of time."). For this reason, CRE 106 "does not create … ‘a categorical rule’ that a defendant’s statements are ‘always admissible under the rule of completeness if [they are] needed to correct a misleading impression.’ " McLaughlin, ¶ 33, 530 P.3d at 1213 (alteration in original). [32, 33] ¶52 Here, the district court abused its discretion by misapplying the law in two ways. First, it believed Montoya had no right to change his mind after refusing to take a test. As noted in the first part of our analysis, that is incorrect. Second, the district court found that even under Rule 106, Montoya could not seek admission of a selfserving recantation of his refusal. Because of these incorrect legal conclusions, the court made no factual findings under Rule 106 as to whether Montoya’s excluded recantation would have clarified or explained his initial refusal to consent to a blood draw and should, in fairness, have been considered contemporaneously with it.3 ¶53 Our recent decision in McLaughlin supports our finding of error. There, a man noticed a truck driving erratically and reported it to the police. McLaughlin, ¶ 5, 530 P.3d at 1207. The police responded and saw the defendant exit the truck and lose his balance. Id. at ¶¶ 5–6, 530 P.3d at 1207–08. The defendant was arrested for DUI. Id. at ¶ 6, 530 P.3d at 1208. During the officer’s interaction with the defendant, which was captured on video by the officer’s body-worn camera, the defendant made several statements suggesting that a woman who was no longer present had been driving. Id. At trial, the prosecution introduced, and the court admitted, a redacted video that deleted all the defendant’s references to the woman because they constituted self-serving hearsay. Id. at ¶¶ 7–8, 530 P.3d at 1208. For example, when the officer asked the defendant what had happened to the truck, the defendant responded, "She, uh, split." Id. at ¶ 10, 530 P.3d at 1208. The redacted video, however, showed the officer’s question without the defendant’s response. Id. The defendant was convicted. Id. at ¶ 13, 530 P.3d at 1210. ¶54 We concluded that the trial court erred by allowing the prosecution to introduce the redacted video. Id. at ¶¶ 3–4, 40, 530 P.3d at 1207, 1214. In so ruling, we observed that because the redacted video implied that the defendant had provided no explanation for how his car ended up in the parking lot, it was misleading. Id. at ¶ 28, 530 P.3d at 1212. We thus concluded that "because the People introduced the misleading body-camera footage from this incident, they were required to introduce [the defendant’s] statements from the footage as well." Id. at ¶ 30, 530 P.3d at 1212. This holding, we said, was "consistent with the touchstone of the rule of completeness: fairness," id. at ¶ 31, 530 P.3d at 1212, which was "especially manifest" because "[t]he People excluded [the defendant’s] statements about the unidentified woman and then argued at trial that no evidence support[ed] [the defendant’s] theory [that] another driver existed," id., 530 P.3d at 1213. ¶55 Although the redacted statement here occurred minutes later, not back-to-back as in McLaughlin, the principle remains the same: admission of both statements was necessary to avoid potentially misleading the jury about what the defendant sought to convey. [34] ¶56 The redacted video in the case before us now is less than eight minutes long. During that time, Montoya repeatedly explained his version of the facts and his alleged concerns about testing. At one point, he even asked the officers whether he should take the test. Montoya asserts that he recanted only about ten to fifteen minutes after refusing. The prosecution agreed about the timing and added that Montoya essentially said that if he was going to jail anyway, he might as well take the test. Thus, Montoya’s vacillation about testing, the short time between refusal and recantation, and his stated reason for recanting collectively provide a more complete picture for the jury, which is entrusted with evaluating whether these facts demonstrate Montoya’s consciousness of guilt. Cf. Zahtila v. Motor Vehicle Div., Dep’t of Revenue, 39 Colo.App. 8, 560 P.2d 847, 849 (1977) (concluding administrative refusal couldn’t be determined without considering evidence of recantation, made twenty-five minutes later, and availability of testing).4 The district court therefore erred by excluding this evidence. [35, 36] ¶57 We hasten to add, however, that this conclusion is predicated on the legal errors that drove the district court’s conclusion under CRE 106. In the absence of such legal errors, a greater measure of deference is afforded in making factual determinations. See United Staten v. Harry, 816 F.3d 1268, 1280 (10th Cir. 2016) ("A defendant seeking reversal based on a violation of the rule of completeness faces a high bar. The contours of the fairness standard are ‘rather vague[,]’ and courts have ‘enormous discretion’ in applying the rule." (quoting 1 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 106.02[1], at 106-4 to 106-6 (Mark S. Brodin, ed., Matthew Bender 2d ed. 1997))). The passage of time and other changes in circumstances should inform the court’s assessment of what is fair in completing a statement and whether any probative value is substantially outweighed by the danger of unfair prejudice. See CRE 106, 403. [37] ¶58 Having found error under Rule 106 in this case, we turn to whether it was harmless. The redacted video presented to the jury shows that Montoya claimed to be unsure about whether to submit to testing but that he ultimately refused. Not only was this potentially misleading, but the district court’s evidentiary ruling prevented Montoya from introducing any evidence to rebut or correct the misimpression. The court, ruled— incorrectly—that a driver’s refusal is irrevocable and so Montoya’s recantation "should not be introduced into evidence." It also ruled that evidence of the alleged recantation was inadmissible because it was self-serving hearsay. Thus, the court’s ruling prevented Montoya from proffering the recantation evidence at all, which impeded his ability to present a complete defense. See Rios-Vargas v. People, 2023 CO 35, ¶ 21, 532 P.3d 1206, 1212 ("In plain terms, this constitutional right [to present a defense] encompasses ‘the right to present the defendant’s version of the facts … to the jury so it may decide where the truth lies.’ " (omission in original) (quoting Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967))). ¶59 The excluded portion of Montoya’s statement could have cast doubt as to whether he ultimately refused testing, which in turn could have undermined the notion that he exhibited consciousness of guilt. This context is particularly important here because the remaining evidence against Montoya wasn’t overwhelming. In the video presented to the jurors, Montoya said that he "drank two beers at noon." The accident occurred around 1 p.m. and the video from the detox facility was recorded closer to 2 p.m. The video alone does not reveal whether Montoya was intoxicated. Throughout the portion of the video at the detox facility, Montoya coherently articulates what he perceives as the risks of testing versus not testing. ¶60 Had the jurors seen the entire video, they could have believed that he ultimately agreed to testing, an action from which they could also have reasonably inferred that Montoya wasn’t intoxicated. Cf. Cox, 735 P.2d at 158–59. The jurors could have then weighed that inference against any inference of guilt derived from Montoya’s initial refusal (or possible gamesmanship based on the flipflopping), and then considered those competing inferences along with the other evidence presented, including the bad driving and mixed assessments about whether Montoya seemed visibly intoxicated. ¶61 Two other circumstances exacerbated the prejudice resulting from the redacted video: (1) the prosecution requested, and the court gave, an instruction that the jury could consider Montoya’s initial refusal as evidence of his guilt; and (2) the prosecution leaned hard on Montoya’s alleged refusal to take a chemical test in both its opening statement and closing argument. ¶62 Thus, we conclude that because this error substantially influenced the fairness of the trial and likely influenced the jury’s verdict, Montoya’s DUI conviction must be reversed. See Krutsinger, 219 P.3d at 1063. III. Conclusion [38] ¶63 We reverse the portion of the division’s opinion that adopted the administrative definition of "refusal" into criminal trials, but we affirm the division’s reversal of Montoya’s felony DUI conviction and remand for a new trial.5 CHIEF JUSTICE BOATRIGHT dissented. CHIEF JUSTICE BOATRIGHT dissenting. ¶64 The rule of completeness prevents a party from using cherry-picked statements to mislead a jury. But that’s not what occurred in this case. Here, Glen Gary Montoya refused a blood draw. Ten to fifteen minutes later, after the only person who could perform the blood draw had departed, then— and only then—did Montoya say that he changed his mind and would consent to a blood draw. Critically, the circumstances had changed by the time Montoya reversed his decision, making the later statement agreeing to a blood draw separate and distinct from his original refusal. Thus, the People did not clearly take the first statement out of context by omitting the second statement, and the district court did not abuse its discretion by finding that the second statement was not necessary to complete the first. ¶65 The majority errs, in my view, by minimizing the shift in circumstances between Montoya’s statements and conflating a relevant statement with a statement that must be admitted under CRE 106, the rule of completeness. By doing so, I fear that the majority blows a hole in the rule of completeness, through which parties—regardless of a shift in context or an intervening change in circumstances—will seek to admit subsequent statements that would otherwise constitute inadmissible hearsay. ¶66 Mindful of the abuse of discretion standard we must apply to the district court’s ruling that Montoya’s second statement was not necessary to complete his first statement, I think this court should reverse the division and allow Montoya’s DUI conviction to stand. I. CRE 106: The Rule of Completeness ¶67 The rule at issue states, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." CRE 106.1a ¶68 We review a trial court’s decision applying CRE 106 for abuse of discretion. People v. McLaughlin, 2023 CO 38, ¶ 22, 530 P.3d 1206, 1211; People v. Owens, 2024 CO 10, ¶ 137, 544 P.3d 1202 (" ‘Trial courts have broad discretion in controlling the mode and extent of the presentation of evidence,’ and we will not disturb a trial court’s evidentiary rulings absent an abuse of discretion." (quoting People v. Cole, 654 P.2d 830, 832 (Colo. 1982))). An appellate court must conclude that the trial court’s CRE 106 ruling was manifestly unfair to reverse it, because the rule turns on "fairness." See McLaughlin, ¶ 22, 530 P.3d at 1211. Even if the trial court made legal errors and employed faulty reasoning, "an appellate court may affirm a lower court’s decision on any ground supported by the record, whether relied upon or even considered by the trial court." People v. Dyer, 2019 COA 161, ¶ 39, 457 P.3d 783, 792 (citing People v. Aarness, 150 P.3d 1271, 1277 (Colo. 2006)). ¶69 When interpreting CRE 106, our courts have emphasized the importance of context to determine if fairness manifestly demanded the inclusion of a statement that the trial court allowed to be omitted. People v. Melillo, 25 P.3d 769, 775 (Colo. 2001) (holding that CRE 106 is "similar to the concept of ‘opening the door,’ " which "prevent[s] one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression" (emphasis added)); People v. Short, 2018 COA 47, ¶ 42, 425 P.3d 1208, 1218 (endorsing a commentator’s summation of the rule’s purpose: "Basically, the rule prevents a party from achieving an unfair result by introducing all or part of a writing or recording out of its context." (quoting 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 106.02 (11th ed. 2015))). ¶70 Therefore, in my view, this court should hold as follows: When a party introduces a statement and an adverse party moves to include a subsequent statement under CRE 106, the trial court must consider whether an intervening change in circumstances shifted the context between the statements so the inclusion of the subsequent statement is not necessary to complete the originally proffered statement. Otherwise, a party could rope together two statements that do not share the same context, which would be unfair and potentially mislead the jury. Thus, a trial court does not abuse its discretion by declining to admit a subsequent statement under CRE 106 when a change in circumstances directly related to the originally proffered statement shifted the context in the interval between the utterance of the two statements. ¶71 What the majority misses is the significance of the changed circumstances between Montoya’s statements. In so doing, the majority conflates (a) the fact that Montoya’s second statement was relevant to the issue of whether he refused a blood draw with (b) whether his subsequent statement was necessary to complete his first statement. II. The District Court’s Ruling ¶72 In my view, the record supports the district court’s ruling that Montoya’s second statement was not necessary to complete his first statement. While ruling on pre-trial motions, the district court determined that the People were not obliged to show the jury Montoya’s subsequent statement (changing his mind) along with his prior statement (refusing a blood draw to the nurse). The court made that ruling when it learned about (1) the interval between Montoya’s statements and (2) the nurse’s departure between Montoya’s statements: THE COURT: How long after [Montoya] refused did he then say he would take [the blood draw]? THE PEOPLE: 15 minutes. THE COURT: And he said this to the nurse? THE PEOPLE: He said it to the officer. The nurse had already left. Montoya’s counsel did not dispute this account of events. ¶73 When ruling that the People did not have to show the video of the subsequent statement, it is true that the court reasoned that by declining the blood draw with his prior statement, Montoya no longer had the right to the blood draw in any case. See Maj. op. ¶ 35. That was incorrect.2a ¶74 The district court, however, also specified that Montoya was not barred from informing the jury that he changed his mind. The court found that it was not fair to force the People to introduce the subsequent statement without the opportunity to cross examine Montoya: "[I]f [Montoya]’s not on the stand to be cross-examined, then the jury seeing [the subsequent statement] is prejudicial and unfair to the People." Therefore, the court ruled that although Montoya could not force the People to admit the recording of his subsequent statement, the fact that he changed his mind was admissible and he could testify to what he did. ¶75 When Montoya’s counsel later specifically raised CRE 106, the court again declined to require that the People present Montoya’s subsequent statement: "Well, for the reasons that I have already expressed, I do not believe in fairness that [the subsequent statement] should be considered contemporaneously with [the prior statement], and therefore [I] would not allow that portion to be entered under the rule of optional completeness." III. The Majority’s Opinion Acknowledges the Importance of Changes in Circumstances for CRE 106 Rulings in Theory, but Not as Applied to Montoya’s Statements ¶76 Before delving into where I depart from the majority, I note that I agree with several of its conclusions. I agree that courts must "consider the admissibility of refusal and recantation evidence as it would any other piece of evidence, using the Colorado Rules of Evidence as their guide." Maj. op. ¶ 45. I also agree that CRE 106 codifies the common-law rule of completeness regarding recorded statements. Id. at ¶ 49 (citing McLaughlin, ¶ 4, 530 P.3d at 1207). I acknowledge that Montoya’s subsequent statement (agreeing to a blood draw) is relevant regarding the issue of whether he actually refused a blood draw, and I agree with the majority that this court cannot rely on the same basis that the district court relied on— that the self-serving nature of Montoya’s subsequent statement rendered it inadmissible. See id. at ¶ 48. Finally and crucially, I strongly agree, "The passage of time and other changes in circumstances should inform the court’s assessment of what is fair in completing a statement and whether any probative value is substantially outweighed by the danger of unfair prejudice." Id. at ¶ 58. ¶77 I respectfully dissent, however, because I do not think the majority followed that final principle in this case. In my view, the record supports a finding that a change in circumstances occurred between Montoya’s statements, and that change in circumstances prevented the district court’s ruling from constituting an abuse of discretion. Thus, I believe the district court did not abuse its discretion by ruling that CRE 106 did not mandate that the People present Montoya’s subsequent statement. CRE 106 does not require a trial court to admit a subsequent statement—even if it is probative and contradicts a prior statement—unless the subsequent statement shares the same context as the prior statement. See Fed. R. Evid. 106 advisory committee’s note to 2023 amendment ("The mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106."). ¶78 Although the majority genuflects to the principle that "changes in circumstances should inform the court’s assessment of what is fair in completing a statement," Maj. op. ¶ 57, it doesn’t follow through. In my opinion, the majority fails to explain why the changes in circumstances between Montoya’s statements are so negligible so as to find that the district court abused its discretion. Without the nurse, there could be no blood draw. Keeping in mind that the CRE 106 issue revolves around Montoya’s statement refusing a blood draw, what greater change in circumstances could there have been than the departure of the only person qualified to draw his blood? I do not think anyone would argue that the rule of completeness would still apply if Montoya changed his mind the next day. At that point, a reliable blood draw could not have been administered. The same outcome occurred here: Without the nurse, a reliable blood draw could not have been administered. Because the record reflects this significant change in circumstances, I think this court is precluded from holding that the district court abused its discretion in ruling that Montoya’s second statement was not necessary to complete the first.3a See Dyer, ¶ 39, 457 P.3d at 792. ¶79 To reach its conclusion, the majority analogizes this case to McLaughlin, in which we held that the trial court abused its discretion.¶ 39, 530 P.3d at 1214. However, the factual record in McLaughlin is very different than this case’s record. In my view, this court has not previously confronted a rule of completeness case involving changes in circumstances. Therefore, this court should turn to on-point precedent from the Colorado Court of Appeals and federal interpretation of the rule of completeness before breaking new ground. IV. This Case Is Factually Distinct from McLaughlin Because a Change in Circumstances Occurred Here ¶80 I strongly disagree with the majority that McLaughlin supports its finding that the trial court abused its discretion. Factual distinctions between Montoya’s statements and McLaughlin’s statements make McLaughlin a very different case. ¶81 In McLaughlin, we applied CRE 106 to footage of an unbroken back-and-forth interaction between an officer and McLaughlin. ¶ 30, 530 P.3d at 1212. That unbroken interaction constituted a singular context. Crucially, nothing had changed between the statements proffered by the People and the statements McLaughlin moved to be included. Over McLaughlin’s CRE 106 objection, however, the trial court admitted edited footage proffered by the People that spliced out several of McLaughlin’s contemporaneous responses to the officer, including a splice that cut off McLaughlin mid-sentence. Id. at ¶¶ 10–11, 530 P.3d at 1208–09. These omitted statements were exculpatory and placed the admitted statements in context. Consequently, this court held that the trial court erred by allowing the prosecution to introduce the edited video because it "create[d] a misleading impression" by omitting footage from that same context, " ‘which clarifi[ed] or explained] the part already received.’ " Id. at ¶¶ 24, 40, 530 P.3d at 1211, 1214 (quoting United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010)). ¶82 Here, conversely, the district court did not admit a video that cut Montoya off midsentence or otherwise cherry-picked incriminating statements out of a conversation that also involved exculpatory remarks. Instead, the court admitted a video of Montoya at a detox facility withdrawing his consent to a blood draw once a nurse arrived to conduct the draw. This occurred after Montoya consented to the draw first at the scene of the collision and then again upon arriving at the detox facility. The video submitted by the People omitted footage of a recorded statement, ten to fifteen minutes after withdrawing his consent, and significantly, after the nurse departed. ¶83 In my view, the nurse’s departure coupled with the interval between Montoya’s contradictory statements changed the circumstances between the statements and, thus, distinguishes this case from McLaughlin. ¶84 To be sure, I would not be dissenting if Montoya had reversed his position sooner, so the nurse was still present during the subsequent statement. And I acknowledge that a subsequent statement need not be uttered in the same breath as a prior statement to justify inclusion under the rule of completeness. However, ten to fifteen minutes is not a "short time" in the context of a break in conversation, and the nurse’s departure should be given substantial consequence. Cf. Maj. op. ¶¶ 55–56 (ignoring the combination of the nurse’s departure and the interval of time).4a ¶85 In my view, the change in circumstances between Montoya’s statements is pronounced enough to, at the very least, respect the district court’s discretionary determination. The district court’s legal errors do not affect whether there is "any ground supported by the record" to affirm its ruling, see Dyer, ¶ 39, 457 P.3d at 792, nor does its erroneous reasoning change the requirement that we must find the substance of the distinct court’s ruling to be manifestly unfair to overrule it, see McLaughlin, ¶ 22, 530 P.3d at 1211. Cf. Maj. op. ¶ 58. ¶86 Even though I think the change in context between Montoya’s statements is dispositive, I am aware of the majority’s principal concern: The jury could have been misled by hearing Montoya’s refusal but not his subsequent change of mind. I grant that Montoya’s change of mind is relevant and contradicts his prior statement. However, the distinct court found that CRE 106 was not a fair means for Montoya to notify the jury that he subsequently changed his mind. The court was clear that Montoya could testify that he changed his mind, but he chose not to take that option. Moreover, although the majority mainly relies on McLaughlin for its interpretation of the rule of completeness, that case did not present a shift in context. The McLaughlin court did, however, qualify that CRE 106 "does not create … ‘a categorical rule’ that a defendant’s statements are ‘always admissible under the rule of completeness if [they are] needed to correct a misleading impression.’ " McLaughlin, ¶ 33, 530 P.3d at 1213 (alteration in original). ¶87 Ultimately, because of a fundamental mismatch of facts—McLaughlin’s singular conversation between two people versus Montoya’s statements separated by a change in context and the passage of time— McLaughlin cannot properly dispose of this case. Even though McLaughlin is not on-point in my view, a case from the Colorado Court of Appeals provides a more analogous comparison. V. This Case Is Similar to Manyik Because a Shift in Context Occurred in Both Cases ¶88 In People v. Manyik, 2016. COA 42, ¶¶ 85–86, 383 P.3d 77, 91, a division of the court of appeals conducted a similar application of CRE 106. In Manyik, the People proffered a recording of Manyik’s interview with the police. ¶ 80, 383 P.3d at 91. The People redacted "a part of the recording in which Manyik had been left alone in the interview room at the police station and had made a number of calls on his cell phone to his family members." Id. The trial court ruled against Manyik’s motion to include the redacted portions under CRE 106, even though Manyik made exculpatory remarks therein. Id. at ¶ 81, 383 P.3d at 91. The division affirmed, substantially because circumstances shifted between Manyik’s phone calls and his police interview:
Although the statements Manyik made during the phone calls were recorded at the same time as his police interview, they were not part of the interview. They were made when the police detectives had left Manyik alone in the interview room, and the detectives were not involved in the conversations Manyik had with his family members. Thus, admitting the statements was not necessary to give the jury a complete and accurate picture of the admitted police interview, and admitting the record-ing of the interview with Manyik’s statements from the phone calls redacted was not confusing or misleading regarding the statements he made during the interview itself. The rule of completeness is therefore inapplicable. Id. at ¶ 86, 383 P.3d at 91 (internal citation omitted). ¶89 The similarities between Manyik and this case militate toward the same holding, finding no abuse of discretion when a trial court concludes that two statements made in different contexts are not necessary to complete each other. ¶90 In addition to Manyik's applicability and McLaughlin's factual inapplicability, this court should consider interpretations of CRE 106’s federal counterpart. See McLaughlin, ¶ 24, 530 P.3d at 1211 ("Because Rule 106 is similarly worded to Fed. R. Evid. 106, federal cases and authorities interpreting the federal rule are highly persuasive in construing CRE 106."). Overall, these highly persuasive authorities emphasize the necessity of a clearly shared context among statements to justify reversing a trial court’s exercise of discretion when it declines to combine a subsequent statement with a prior statement. VI. Federal Interpretation Demonstrates that One Statement Is Not Necessary to Complete Another Unless They Share the Same Context ¶91 "A defendant seeking reversal based on a violation of the rule of completeness faces a high bar. The contours of the fairness standard are ‘rather vague’ and courts have ‘enormous discretion’ in applying the rule." United States v. Harry, 816 F.3d 1268, 1280 (10th Cir. 2016) (quoting 1 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 106.02[1], at 106-4 to 106-6 (Mark S. Brodin, ed., Matthew Bender 2d ed. 1997)). ¶92 At its core, the rule of completeness "is meant to prevent the jury from being misled by reading or hearing a statement ‘out of context.’ " United States v. Altvater, 954 F.3d 45, 49 (1st Cir. 2020) (quoting Fed. R. Evid. 106 advisory committee’s note to 1972 proposed rules); see also United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014); United States v. Lemon, 714 F. App’x 851, 860 (10th Cir. 2017) (unpublished opinion) ("[T]he ‘misleading’ that Rule 106 is concerned with is ‘the misleading impression created by taking matters out of context.’ "). Further, a recent comment to Fed. R. Evid. 106 clarifies that, to warrant inclusion under the rule, a subsequent statement must have a contextual nexus to the prior statement over and above being relevant and contradictory to the prior statement:
The [2023] amendment does not give a green light of admissibility to all excised portions of statements. It does not change the basic rule [of completeness], which applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression. The mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106. So, for example, the mere fact that a defendant denies guilt before later admitting it does not, without more, mandate the admission of his previous denial. See United States v. Williams, 930 F.3d 44 (2d Cir. 2019). Fed. R. Evid. 106 advisory committee’s note to 2023 amendment.5a Therefore, federal guidance recognizes that shifts in context between statements are an important consideration for determining whether a subsequent statement is necessary to complete a prior statement. ¶93 In Williams, the case cited in the committee’s note, the court determined that the trial court did not abuse its discretion by allowing the prosecution to present the defendant’s confession while omitting his previous denials. 930 F.3d at 60 ("[A]lthough it was within the district court’s discretion to permit [the defendant] to elicit his initial false exculpatory statements, [the defendant] has failed to show that the district court abused its discretion in deciding to exclude them."). The court reasoned, "the mere fact that a suspect denies guilt before admitting it, does not—without more—mandate the admission of his self-serving denial. … [The defendant’s] confession was ‘simply a reversal of his original position.’ " Id. at 61; see also United States v. Gramajo, 565 F. App’x 723, 728 (10th Cir. 2014) (unpublished opinion) (rejecting a Rule 106 appeal because the defendant’s subsequent "self-serving denials of guilt" did not give "context" to prior admissions). ¶94 Likewise, the mere fact that Montoya changed his mind regarding consent to the blood draw does not mandate the admission of the subsequent statement. It was "simply a reversal of his original position." See Williams, 930 F.3d at 61. What the majority misses, in my view, is that the rule of completeness treats subsequent reversals after a change in circumstances differently than clarifications, explanations, or contemporaneous reversals. ¶95 Relatedly, this court should heed federal courts’ wary approach to adverse parties’ attempts to use the rule of completeness to interject disconnected contradictory statements. E.g., United States v. Herman, 997 F.3d 251, 264 (5th Cir. 2021) ("Rule 106 permits a party to correct an incomplete and misleading impression created by the introduction of part of a writing or recorded statement; it does not permit a party to introduce writings or recorded statements to affirmatively advance their own, alternative theory of the case."); United States v. Bollin, 264 F.3d 391, 414 (4th Cir. 2001), overruled on other grounds by United States v. Chamberlain, 868 F.3d 290, 295 (4th Cir. 2017); accord Diggs v. United. States, 28 A.3d 585, 598 (D.C. 2011) (interpreting the rule of completeness). ¶96 Contradictory statements separated by time are especially suspect, because as the remoteness between statements widens, it becomes less likely that the subsequent statement manifestly or necessarily completes the prior statement. See United States v. Branch, 91 F.3d 699, 728 (5th Cir. 1996) (finding no abuse of discretion when the trial court declined to include statements because they were uttered "several hours later" even though those statements were relevant); Lemon, 714 F. App’x at 860 (affirming the district court’s decision to exclude a statement made after the defendant had time to reflect "on the consequences of his prior confession" because "one does not understand more" about the defendant’s prior confession by reading the subsequent statement). ¶97 Here, one does not understand more about Montoya’s prior statement by viewing his subsequent statement. One only learns that he later recanted. See Branch, 91 F.3d at 728 ("We do not doubt the exculpatory nature of the excluded statement, but that does not require its admission under Rule 106."). While his subsequent statement agreeing to the blood draw is probative regarding whether he refused, that alone did not make it necessary to admit under the rule of completeness. VII. Conclusion ¶98 Accordingly, I respectfully dissent. Montoya’s reversal after a change in circumstances did not so clearly complete his prior statement so as to justify the majority’s holding that the district court abused its discretion. Thus, I believe this court should reverse the division regarding this issue and allow Montoya’s DUI conviction to stand.
1We granted certiorari to review the following issues: 1. [REFRAMED] Whether the definition of "refusal" or "refusal by noncooperation" under the expressed consent statute for administrative driver’s license revocation is applicable in a criminal DUI trial. 2. [REFRAMED] Whether the court of appeals erred in holding that the prosecution was required to present evidence, in his criminal trial for driving under the influence, that defendant claimed he was willing to take a blood test after he had previously agreed but then refused to submit to one.
2CRE 106 was amended by court order on April 4, 2024. 2024 Colorado Court Order 0007 (Apr. 4, 2024). It now applies to all statements, not just those that are written or recorded. Id. We nonetheless quote the prior version because it was in effect throughout Montoya’s trial and appeal and because the amendment isn't relevant to the issues before us.
3Although the district court didn't have the benefit of our decisions in McLaughlin and Vanderpauye, we apply those decisions here because Montoya’s conviction is not yet final. See People v. McAfee. 160 P.3d 277, 281 (Colo. App. 2007), as modified on denial of reh’g (Mar. 1, 2007).
4To the extent the prosecution suggests that the relevant context shifted simply because the nurse left, we disagree. The issue for the jury was what Montoya decided to do, not who was in the room when he made the decision. Moreover, basing our analysis on when the nurse left would once again conflate the rules governing an administrative revocation hearing with those governing a criminal trial.
5We recognize that, because of Montoya’s death, retrial is impossible. But the decision to dismiss is not ours to make. People v. Dist. Ct., 632 P.2d 1022, 1024 (Colo. 1981); see also McCoy v. People, 2019 CO 44, ¶ 28, 442 P.3d 379, 387. While it might not matter here, we note that trial courts must now be mindful of People v. Kembel, 2023 CO 5, ¶ 4, 524 P.3d 18, 21, in which we held "that a trial court may not bifurcate the elements of the offense of felony DUI (or of any offense) during a jury trial." Accordingly, a trial court must hold a unitary trial that includes proof of all the elements of felony DUI, including the fact of a defendant's prior DUI convictions.
1aAs noted by the majority, the recent amendment to CRE 106 "isn’t relevant to the issues before us." Maj. op. ¶ 48 n.2.
2aOn appeal, the People articulated a different ground for affirming the district court’s ruling by arguing that the change of circumstances between Montoya’s statements meant that presenting only his first statement was not "distorting or misleading." This court has the obligation, in my view, to address the merits of that argument. See People v. Quintana, 882 P.2d 1366, 1371 (Colo. 1994) ("[O]n appeal[,] a party may defend the judgment of the trial court on any ground supported by the record, regardless of whether that ground was relied upon or even contemplated by the trial court."), abrogated on other grounds by Rojas v. People, 2022 CO 8, 504 P.3d 296.
3aThe division noted that "[a]fter Montoya’s change of mind, however, it is unknown whether the nurse could have come back to administer the test before the statutory two-hour period expired at approximately 2:40 p.m." People v. Montoya, 2022 COA 55M, ¶ 22 n.7, 516 P.3d 970, 976 n.7. The record is clear that the nurse was necessary for the blood draw, the nurse departed, and Montoya's counsel did not contend that the nurse could have returned to administer a reliable blood draw. This is exactly why, applying the abuse of discretion standard of review, this court should defer to the trial court's finding that the change in circumstances was significant.
4aThe majority states in its fourth footnote, "To the extent the prosecution suggests that the relevant context shifted simply because the nurse left, we disagree. The issue for the jury was what Montoya decided to do, not who was in the room when he made the decision." Maj. op. ¶ 56 n.4. I disagree. The departure of the only person qualified to perform a blood draw directly bears on statements regarding a blood draw.
5aFederal courts have heeded the new comment. See, e.g., United States v. Mayfield, No. 3:22-CR-31-KHJ-FKB, 2024 WL 86864, at *2 (S.D. Miss. Jan. 8, 2024); United States v. Crowell, No. 2:23-cr-8, 2023 WL 8642213, at *1 (S.D. Ohio Dec. 14, 2023).